**Diane Joy JENKINS, Plaintiff,**

v.

**THE TRUSTEES OF SANDHILLS COMMUNITY COLLEGE,**

**and**

**The State of North Carolina, Defendants.**

**Nos. 1:99 CV 00664, 1:00 CV 00166.**

United States District Court, M.D. North Carolina.

April 25, 2003.

See, also, 2002 WL 31941503.

Diane Joy Jenkins, Portsmouth, VA, pro se.

Denis E. Jacobson, Tuggle Duggins & Meschan, PA, Greensboro, NC, Randall M. Roden, Tharrington Smith, Raleigh, NC, Joyce S. Rutledge, N.C. Dept. of Justice, Raleigh, NC, for Defendants.

Carmen J. Battle, Fayetteville, NC, movant.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This matter is now before the Court on the Defendant State of North Carolina's ("State's") Motion to Dismiss [Doc. # 6]; the State's Motion to Decide its Motion to Dismiss as an Uncontested Motion [Doc. # 14]; the Defendant Trustees' of Sandhills ("Trustees" ') Motion to Dismiss [Doc. # 19]; Ms. Jenkins' Motion to Strike the Motion to Dismiss [Doc. # 30]; the State's New Motion to Dismiss [Doc. # 38]; Ms. Jenkins' Motion to Dismiss All Responsive Pleadings and Motions by the State [Doc. # 43]; Ms. Jenkins' Motion to Dismiss All Responsive Pleadings and Motions by the Trustees [Doc. # 37]; Ms. Jenkins' Motion to Mediate [Doc. # 60]; the State's Motion for Summary Judgment or Dismissal [Doc. # 79]; the Trustees' Motion to Dismiss [Doc. # 84]; the Trustee's and Individual Defendants' Motion for Summary Judgment or Dismissal [Doc. # 90].[1]

For the reasons set forth below, the States' Motion for Summary Judgment or Dismissal [Docs. # 79] is GRANTED as to the federal claims, Counts I, II, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV of the Second Amended Complaint; the Trustees' and Individual Defendants' Motion for Summary Judgment or Dismissal [Doc. # 90] is GRANTED as to the federal claims, Counts I, II, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV of the Second Amended Complaint; the state law claims, Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XXVI, and XXVII of the Second Amended Complaint are DISMISSED because the Court declines to exercise supplemental jurisdiction; and the remaining motions [Docs. # 6, 14, 19, 30, 38, 43, 47, 60, and 84] are DENIED as MOOT.

---

1. These motions are pending in case number 1:99CV00664. Similar motions pending in the consolidated case, number 1:00CV00166, will also be decided at this time: Ms. Jenkins' Motion to Dismiss [Doc. # 7], State's Motion to Dismiss or for Summary Judgment [Doc. # 15]; Trustees' Motion to Dismiss [Doc. # 20]; and Trustees' and Individual Defendants' Motion for Summary Judgement or Dismissal [Doc. # 26].

## I.

Stated in the light most favorable to the plaintiff, the facts of the case are as follows. Plaintiff Diane Joy Jenkins, an African–American female, was employed at Sandhills Community College ("Sandhills") in Pinehurst, North Carolina, from 1994 to 1999. Ms. Jenkins taught classes in both English and Communications. In May 1996, Ms. Jenkins disciplined two white students for chewing gum in her class. Those students complained to Dean of Students Carol Ewing that Ms. Jenkins was being racially discriminatory in her treatment of students. Dean Ewing investigated the accusations by looking at the pattern of grades given out by Ms. Jenkins and by talking to additional students regarding their perception of Ms. Jenkins. [Doc. # 77, ex. A]. The grade analysis did not show that Ms. Jenkins had given grades to students based on their race.

In July 1996, Ms. Jenkins wrote a letter, entitled Grievance and Conference Request, to Dean Ewing and Dr. Patricia A. Toney, the Vice President of Enrollment Management. [Doc. # 77, ex. A]. In this letter, Ms. Jenkins requested a conference with Dean Ewing and Dr. Toney regarding the manner in which the student complaints of grade discrimination had been investigated. Specifically, Ms. Jenkins complained that the Dean "share[ed] with the two students the telephone interview comments and my grade distribution breakdown according to race." [Doc. # 77, ex. A]. Ms. Jenkins eventually met with Dean Ewing regarding the investigation, and Ms. Jenkins was told that there was no evidence she had assigned grades based on race.

On March 13, 1997, John Dempsey, the president of Sandhills, wrote to Ms. Jenkins and notified her that based on the results of evaluations completed by the Vice President of Instructional Services and the Dean of Instruction, Ms. Jenkins would not be elevated to associate professor and would be issued a probationary contract for the 1997–98 school year. The letter cited two specific reasons for the continued probationary status: (1) "[y]ou must make satisfactory progress in establishing and maintaining positive and effective relationships with the students you teach"; and (2) "[y]ou must demonstrate an enthusiastic commitment to teach English 060, Speaking English Well." [Doc. # 90, ex. 1]. The letter also instructed Ms. Jenkins to contact her Department Chair, the Coordinator of Developmental Studies, the Dean of Instruction, the Vice President of Instructional Services, or the President if she had "any questions concerning this matter." [Doc. # 90 ex. 1].

On March 27, 1997, Ms. Jenkins requested, and received, one year of unpaid leave to begin in July 1997 to promote her recently published textbook. [Doc. # 90, ex. 2]. On April 10, 1997, Ms. Jenkins' request for leave without pay for the 1997–1998 academic year was approved. This letter also advised Ms. Jenkins that upon her return in the fall of 1998, she would continue as a probationary employee. The letter further instructed Ms. Jenkins that she should meet with individuals in the Instructional Services division of Sandhills in February 1998 to determine her teaching schedule for the Fall 1998 school term. [Doc. # 90, ex. 3].

On May 7, 1997, Ms. Jenkins wrote a letter to Dr. Dempsey thanking him for approving her request for a one year leave without pay. Ms. Jenkins explained:

> [I]t is very important to me that you understand that my decision was not a result of anger or malice concerning your letter dated March 13, 1997 [in which her probationary status was extended].
>
> While I do not agree with the decision to delay my promotion to associate profes-

sor nor to issue me a probationary contract, it is in my best interest to channel my energy positively which will result in greater productivity for Sandhills Community College. [Doc. # 90, ex. 4].

At some point later that spring, Ms. Jenkins contacted her department chair in order to obtain a copy of her evaluation for the 1996–1997 school year; on May 19, 1997, Ms. Jenkins sent a memo to Rick Lewis, the chair of the Languages Department: "When will I receive my 1996–1997 faculty evaluation from you? When are you scheduling evaluation conferences for department faculty?" On May 22, 1997, Mr. Lewis responded, "The first week of summer school. I'll arrange a time with you on registration day." [Doc. # 77. ex. B]. There is no evidence that Ms. Jenkins ever met with Mr. Lewis regarding the written evaluation for the 1996–1997 school year.[2]

Ms. Jenkins took the leave of absence for the 1997–1998 school year as scheduled. On April 9, 1998, Sandhills contacted Ms. Jenkins regarding the 1998–1999 school year, the school year following her leave of absence. This letter provided a tentative course load for Ms. Jenkins for the 1998–1999 school year and also instructed Ms. Jenkins to contact Sandhills regarding textbook selection for her courses. On April 27, 1998, Ms. Jenkins sent a letter to the president of Sandhills that stated in part: "This is to inform you that I will not return to teach at Sandhills Community College during the 1998–1999 academic year, as I previously agreed. I have decided that I need another year to build a customer base for my recently published book." [Doc. # 90, ex. 7.] The president responded to Ms. Jenkins' request for an additional leave of absence by letter dated May 4, 1998: "Thank you for your letter . . . . It is not possible to extend your leave beyond one year. Therefore, we must now consider the speech/communication position to be vacant. It is our intention to fill this position at the earliest opportunity. I thank you for your service with Sandhills Community College." [Doc. # 90, ex. 8.].

In June 1998, Ms. Jenkins met with a Vice President of Sandhills. He allowed her to view her personnel file, which contained a partially completed performance evaluation for the 1996–97 academic year. Neither the Vice President nor Dr. Dempsey, with whom Ms. Jenkins subsequently met, could explain why the performance evaluation had not been completed and why Ms. Jenkins had not met with her Department Chairperson in a timely fashion.

In March of 1999, Ms. Jenkins sent a demand letter to the President and the Trustees, asking for $333,000 and a position as a non-probationary faculty member at Sandhills. [Doc. # 77, ex. E]. In the letter, Ms. Jenkins stated that she was interested in mediation and also considered filing a discrimination suit. She asserted that while employed by Sandhills she had been the victim of racial discrimination evidenced by not having received an evaluation for the 1996–1997 school year and that her probationary status had, without appropriate cause, been extended. In the demand letter, Ms. Jenkins also stated

2. The Sandhills Policies and Procedures Handbook provides: "Although faculty evaluation is a continual process, each instructor will meet with the department chair once per academic year for a formal evaluation session. At that time the department chair will give the instructor a written report of his evaluation of the instructor and of the chair's recommendation to the dean of instruction of the instructor's employment for the following academic year. Although the form of that evaluation may be determined by the college administration or Faculty Assembly, the chair will base the evaluation on the following: Advising, Teaching effectiveness, Contribution to department activities." [Doc. # 29, ex. 2].

that she had received a letter in July 1998 welcoming her back to Sandhills as an adjunct faculty member and inviting her to an adjunct faculty dinner. She stated that this adjunct faculty letter was "very confusing," and had caused her to believe that perhaps she had not been terminated by Dr. Dempsey's May 4, 1998 letter. Ms. Jenkins also wanted her probationary status reversed and wanted an opportunity to view and copy her personnel files. [Doc. # 77, ex. E].

Dr. Dempsey responded to Ms. Jenkins' demand letter and denied the monetary demand. As to the issue of her probationary status, Dr. Dempsey explained the issue "was closed" because Ms. Jenkins' employment had been terminated when she did not return for the 1998–1999 school year. [Doc. # 77, ex. F.] Dr. Dempsey further explained that Ms. Jenkins was "not the first teacher at Sandhills to have received an additional year of probationary status. In recent years, this has happened on two other occasions. Contrary to the statement in your March 9, 1999, letter, the other two occasions involved white instructors." Dr. Dempsey also explained that the letter relating to adjunct faculty had been sent to her as a result of clerical error.

In March 1999, Ms. Jenkins filed a charge of discrimination based on race and retaliation with the Equal Employment Opportunity Commission ("EEOC"). In the charge of discrimination, Ms. Jenkins alleged the following incidents as examples of discrimination: (1) retaliation for a grievance she filed with Sandhills regarding "possible inconsistency of Student Development's methods of investigation and evaluating faculty/student conflicts with respect to racial background"; (2) denial of a performance evaluation for the 1996–1997 school year; and (3) extension of probationary status for an additional year. [Doc. # 90, ex. 9]. Ms. Jenkins also assert-ed that she had filed a complaint with Sandhills for the manner in which the investigation of student complaints was handled. On May 3, 1999, the EEOC notified Ms. Jenkins that her claim could not be investigated because it was not timely filed. The EEOC also issued Ms. Jenkins a right-to-sue letter.

On March 31, 1999, Ms. Jenkins sent another letter to Dr. Dempsey and the trustees of Sandhills with a list of 18 questions to which she requested "narrative style explanations." The questions focused primarily on the 1996–1997 written evaluation and also included questions regarding the extension of Ms. Jenkins' probationary status. Ms. Jenkins asserted that the real reason for the extension of her probationary status was the memo she wrote "protesting the Dean of Student's possible investigation of students' complaints of faculty with regard to racial background." [Doc. # 29, ex. 4]. President Dempsey responded to Ms. Jenkins' letter on April 30, 1999 and explained, "[b]ecause this matter potentially involves litigation, I am not in a position to attempt to respond to the matters contained in your letter of March 31, 1999." [Doc. # 29, ex. 5].

On May 4, 1999, Ms. Jenkins applied for a job as the Bookstore Manager at Sandhills. Forty-three people applied for the job, and Ms. Jenkins was not hired for the position. The applicant chosen for the job was a white woman who had been the assistant manager of the bookstore for four years.

On August 11, 1999, Ms. Jenkins filed a *pro se* Complaint in the Middle District of North Carolina. [Doc. # 3]. On August 26, 1999, she paid her filing fee. On October 18, 1999, she filed an Amended Complaint [Doc. # 5]. Simultaneous service of the original Complaint and the Amended Complaint was eventually made. Ms. Jenkins filed multiple motions to amend the

amended complaint. In December 2002, the motions to amend were considered and Ms. Jenkins was instructed to file a Second Amended Complaint in compliance with the court order regarding the motions to amend the complaint. [Doc. # 76]. The Second Amended Complaint was filed January 2, 2003. [Doc. # 77].

Ms. Jenkins' Second Amended Complaint seeks relief on 27 different causes of action based on the following constitutional and statutory provisions: (1) the Civil Rights Act of 1866, 1964, and 1991; (2) 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 28 U.S.C. § 1343(a)(3); (3) N.C. State Const., art. 1, § 1; (4) N.C. State Const., art. 1, § 14; (5) N.C. State Const., art. 1, § 17; (6) N.C. State Const., art. 1, § 19; (7) N.C. State Const., art. 1, § 21; (8) N.C. Gen. Stat. § 115D–6; (9) N.C. Gen.Stat. § 115D–77; (10) N.C. Gen.Stat. § 126–84; (11) N.C. Gen.Stat. § 126–85; (12) N.C. Gen.Stat. § 143–422.1; (13) U.S. Const. amend. I; (14) U.S. Const. amend. V; (15); U.S. Const. amend. XIII; (16) U.S. Const. amend. XIV; (17) 18 U.S.C. § 241; (18) 18 U.S.C. § 242; (19) 42 U.S.C. § 1981(a); (20) 42 U.S.C. § 1982; (21) 42 U.S.C. § 1985(3); (22) 42 U.S.C. § 1986; (23) 42 U.S.C. § 1994; (24) 42 U.S.C. § 2000e–2(a), (h) and (m); (25) 42 U.S.C. § 2000e–3(a). Ms. Jenkins also seeks relief under the North Carolina common law causes of action of breach of contract, defamation, and emotional distress. As relief Ms. Jenkins seeks a permanent injunction against the defendants from engaging in unlawful practices and policies, $1,710,000 in compensatory damages, $1,000,000 in punitive damages, as well as back pay and instatement to the position of the bookstore manager. The State, the Trustees, and the individual defendants have filed motions to dismiss or for summary judgment.

## II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cox*, 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cox*, 249 F.3d at 299. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

A nonmoving party may not rely on the pleadings alone to oppose summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *See Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973 (4th Cir.1990). The evidence may be proffered to the court, as specified in *Fed. Rule Civ. P.* 56(e), by admissions on file or by deposition testimony, answers to interrogatories, or affidavits which must show that the person stating material facts has personal knowledge

of those facts and is competent to testify about them.

In this case, much of the proffered evidence has been in the form of letters exchanged between the parties during the occasions complained about. While neither party has submitted an affidavit attesting to the authenticity of the letters, each has proceeded directly to discuss the substance of the letters submitted by the other party and has not argued that the letters are not what they have been represented to be. In addition, upon reading the letters, it is apparent they are responsive to each other. Since the parties have accepted the authenticity of the letters, the Court will do so as well. *See Jones v. Owens–Corning Fiberglas Corp. and Amchem Products, Inc.,* 69 F.3d 712 (4th Cir. 1995).

### III.

Ms. Jenkins has named the Trustees of Sandhills and numerous individual employees of Sandhills as defendants. The bulk of the claims against these defendants involve Ms. Jenkins' allegations of racial discrimination. Ms. Jenkins alleges that she was subjected to six incidents of racial discrimination contending that: (1) she was denied a performance evaluation for the 1996–97 academic year while white instructors were given their evaluations; (2) unlike white instructors, she had her probationary status extended; (3) her conflicts with her students were investigated and evaluated in a way that white instructors' student conflicts were not; (4) she suffered a discriminatory discharge; (5) she was demoted to part-time status because of her race; and (6) she was not hired as the bookstore manager because of her race.

### A.

Ms. Jenkins has asserted that the defendants' allegedly discriminatory conduct constitutes violations of her rights guaranteed by the First Amendment, Fifth Amendment, Thirteenth Amendment, and Fourteenth Amendments of the United States Constitution.

#### 1.

■ Ms. Jenkins has alleged a violation of her First Amendment right to free speech because she contends that she suffered retaliation due to her complaint to Dean Ewing regarding the way student complaints about her were investigated. For a public employee [3] to state a claim for retaliation under the First Amendment (1) the employee must speak as a citizen on a matter of public concern, (2) the employee's interest in speaking on the matter must outweigh the government's interest in providing effective and efficient services to the public, (3) the employee must be "adversely affected" by the alleged retaliation in a manner that "tended to chill his ... First Amendment rights" and (4) the speech must be a "substantial factor in the decision to take the allegedly [adverse] retaliatory action." *Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 351–52 (4th Cir.2000).

In order to receive First Amendment protection, public employee speech must be upon a "matter of legitimate public concern," rather than about the employee's own conditions of employment or personal circumstances. *See Berger v. Battaglia,* 779 F.2d 992, 998–99 (4th Cir.1985); *see also Huang v. Board of Governors of University of North Carolina,* 902 F.2d 1134, 1140 (4th Cir.1990) (noting that "it is settled that a public employee's expression of

---

**3.** For purposes of the First Amendment claim, it is assumed that Ms. Jenkins is a public employee.

grievances concerning his own employment is not a matter of public concern)." Ms. Jenkins submitted a grievance with Dean Ewing regarding the manner in which Dean Ewing investigated student complaints about Ms. Jenkins. This grievance concerns Ms. Jenkins' own employment and is not a matter of legitimate public concern. Therefore, Ms. Jenkins' claim pursuant to the First Amendment, Count XIII of the Second Amended Complaint, is DISMISSED.

### 2.

■ Ms. Jenkins contends that the alleged racially discriminatory conduct committed by the defendants constitutes a violation of the Thirteenth Amendment. By its terms, the Thirteenth Amendment prohibits "involuntary servitude." The United States Supreme Court has rejected a broad interpretation of "involuntary servitude" and has interpreted the phrase as applying to situations involving the compulsion of services "by the use or threatened use of physical restraint or injury, or by the use of threat of coercion through law or the legal process." *United States v. Kozminski,* 487 U.S. 931, 948, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) (rejecting a broad construction of "involuntary servitude" that would consider the victim's subjective state of mind, would include situations where the victim has "no tolerable alternative but to serve the defendant," or where the "victim is deprived of the power of choice").

Ms. Jenkins contends that racial discrimination is a "badge of slavery," and that in discriminating against her, the Defendants ran afoul of the Thirteenth Amendment. Further, she contends that when her probationary period was extended, she was subjected to "involuntary servitude." Because the Second Amended Complaint does not contain any allegations

that Ms. Jenkins was physically restrained, threatened with the use of physical restraint or injury, or coerced by threat of legal process, she has no cause of action under the plain language of the Thirteenth Amendment. *See e.g., Channer v. Hall,* 112 F.3d 214, 217 (5th Cir.1997) (assuming *"arguendo,* that the Thirteenth Amendment directly gives rise to a cause of action for damages under the analysis articulated in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and its progeny" and rejecting plaintiff's assertion that the Thirteenth Amendment was violated). Ms. Jenkins's Thirteenth Amendment Claim, Count XV of the Second Amended Complaint, is DISMISSED.

### 3.

In Count XVI of the Second Amended Complaint, Ms. Jenkins purports to bring a direct claim based on the Equal Protection Clause [4] of the Fourteenth Amendment. The Fourth Circuit has explained that a discrimination plaintiff "cannot bring a claim directly under the Fourteenth Amendment because it does not create a cause of action. [The plaintiff's] claim under the Fourteenth Amendment merges into her § 1983 claim because § 1983 merely creates a statutory basis to receive a remedy for the deprivation of a constitutional right." *Hughes v. Bedsole,* 48 F.3d 1376, 1383 n. 6 (4th Cir.1995). Thus, Count XVI is DISMISSED.

### B.

Ms. Jenkins also asserts that she is entitled to relief based on statutory provisions of the Civil Rights Acts of 1866, 1964, and 1991. Specifically, she alleges violations of Title VII, codified at 42 U.S.C. § 2000e, et. seq., 42 U.S.C. § 1981, 42 U.S.C. § 1982,

---

**4.** For a discussion of Ms. Jenkins' claim pursuant to the Due Process Clauses of the Fifth

and Fourteenth Amendments, see Part III. B.3.

42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 1994. Each of these statutory provisions will be addressed in turn.[5]

1.

■ Ms. Jenkins' Title VII claim will be addressed first. Before a plaintiff has standing to file suit under Title VII, she must exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir.2000). The EEOC charge must be filed within 180 days of the occurrence of the allegedly discriminatory conduct. 42 U.S.C. § 2000e–5(e)(1) (1994).

Ms. Jenkins filed an EEOC charge on March 9, 1999. In it, she mentioned the denial of her performance evaluation, the extension of her probationary status, and retaliation against her for having filed the grievance about the way her conflicts with her students were handled. Each of these occurrences was well outside the 180 day filing requirement. Ms. Jenkins' grievance about the student investigation was in July 1996, she was notified that her probationary status would be extended in March 1997, and she did not receive a performance evaluation for the 1996–1997 school year at the latest in July 1997. As a result, Ms. Jenkins' EEOC charge with respect to these incidents was not timely filed, and her Title VII claim regarding these incidents must be DISMISSED.

■ In addition to the 180 day filing requirement, the EEOC charge defines the scope of the plaintiff's right to institute a civil suit in that the "scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir.2002) (*quoting Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981)). Ms. Jenkins did not make an EEOC charge related to termination, demotion, or failure to hire her for the bookstore manager position. As a result, Ms. Jenkins has not exhausted her administrative remedies with respect to these incidents, and those aspects of her Title VII claim must also be dismissed. *See e.g., Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir.1999) ("It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC."). Because the scope of Ms. Jenkins' complaint "exceeds the limits set by the allegations of [her] administrative complaint," the merits her claims regarding demotion, termination, and failure to hire cannot be considered under Title VII. *Id.* at 133. Ms. Jenkins's Title VII claim is fatally flawed and must be dismissed in its entirety. Therefore, Counts XXIV and XXV of the Second Amended Complaint are DISMISSED.

2.

■ The next claims that must be considered are Ms. Jenkins's claims under 42 U.S.C. §§ 1981 and 1983.[6] Section 1981

---

**5.** Ms. Jenkins has also alleged violations of 18 U.S.C. §§ 241–242. These civil rights provisions, located in the criminal code, do not create a private cause of action for private litigants. Therefore, Counts XVII and XVIII are DISMISSED.

**6.** In *Hughes v. Bedsole*, 48 F.3d 1376 (4th Cir.1995), the Fourth Circuit suggested in a footnote that a plaintiff could not bring a sex discrimination suit pursuant to § 1983 after the plaintiff failed to file a Title VII action within the time designated in the EEOC right to sue letter. The Fourth Circuit explained that this failure to file a Title VII action foreclosed her ability to bring a suit under § 1983. *Id.* at 1383 n. 6. Some district courts in the Fourth Circuit have followed *Hughes* and held that Title VII preempts § 1983 actions. *See Brandon v. City of Richmond*, No. 3:00CV00874, 2001 U.S. Dist. LEXIS 17908, at *9 (E.D.Va. Oct. 25, 2001); *Davis v. King,*

provides in pertinent part that "all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." The Fourth Circuit has held that § 1981 actions also serve to protect at-will employees from race discrimination. *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018–19 (4th Cir.1999) (holding that an at-will employment relationship is contractual and may serve as a predicate contract for a § 1981 claim). Section 1983 imposes liability on persons who deprive others of their federally protected rights under color of state law.[7]

The required elements of a prima facie case of employment discrimination are the same under Title VII, § 1981, and § 1983. *Gairola v. Commonwealth of Va. Dept. of Gen. Servs.,* 753 F.2d 1281, 1285 (4th Cir. 1985). In order to prove a claim of racial discrimination in violation of § 1981 or § 1983, a plaintiff may provide direct evidence of discrimination, such as "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision," or, in the absence of such direct evidence, the plaintiff may proceed using circumstantial evidence under the burden-shifting proof scheme established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Taylor v. Virginia Union University,* 193 F.3d 219, 232 (4th Cir.1999).

Ms. Jenkins does not provide any evidence that "reflect[s] directly the alleged discriminatory attitude" and "bear[s] directly on the contested employment decision" with respect to Sandhills. *Id.* Therefore, she must proceed under the *McDonnell Douglas* burden-shifting proof scheme. Under *McDonnell Douglas,* a plaintiff's prima facie case of discrimination creates an inference that the employment action was based on unlawful discrimination. If the plaintiff can establish a prima facie case, the employer must then state a nondiscriminatory reason for its action in order to rebut that inference. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the employer presents such a reason, the plaintiff can still prove discrimination by showing that the stated reason is a mere pretext for a decision motivated by discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. However, if a plaintiff fails to establish a prima facie case of

No. 5:96CV673H2, 1997 U.S. Dist. LEXIS 23970, at *9 (E.D.N.C. May 6, 1997); *Burtnick v. McLean,* 953 F.Supp. 121, 123 (D.Md. 1997).

Other authority in the Fourth Circuit, however, is that Title VII does not preempt § 1983 claims when the 1983 claim is based on a constitutional provision, such as the Equal Protection Clause of the Fourteenth Amendment. *See Keller v. Prince George's County,* 827 F.2d 952, 963 (4th Cir.1987) (conducting a thorough analysis of the legislative history of the 1972 amendments to the civil rights acts and concluding that Title VII does not preempt the "remedy available for a violation of the fourteenth amendment for

intentional employment discrimination provided by § 1983"); *Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994) (analyzing the 1991 amendments to the Civil Rights Act and concluding that "[n]othing in the text of the Civil Rights Act of 1991 or in its legislative history contradicts the Court's recognition that Title VII does not supplant § 1983").

7. To maintain a § 1983 action a plaintiff must establish as a jurisdictional requisite that the defendant acted under color of state law. *Polk County,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). For purposes of addressing the merits of Ms. Jenkins' § 1983 claim, it will be assumed that the defendants acted under color of state law.

discrimination or fails to raise a genuine factual dispute concerning the employer's non-discriminatory explanation for the alleged discriminatory act, the Defendant is entitled to summary judgment. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir.1995).

To establish a prima facie case of discrimination, Ms. Jenkins must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met the employer's legitimate job expectations; and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir.2001).

As to the first element, Ms. Jenkins has presented evidence that she is an African-American female. To satisfy the second element, Ms. Jenkins has alleged that the following incidents constitute adverse employment actions: (1) she did not receive a performance evaluation for the 1996–1997 school year while white employees did receive performance evaluations; (2) unlike white instructors, she had her probationary status extended; (3) her conflicts with her students were investigated and evaluated in a way that white instructors' student conflicts were not; (4) she suffered a discriminatory discharge; (5) she was demoted to part-time status; and (6) she was not hired for the bookstore manager position because of her race.

First, it must be noted that Ms. Jenkins' employment was not terminated by Sandhills. She requested an additional one year leave of absence to promote her textbook, and that request was denied because Sandhills needed to fill her position. When Ms. Jenkins' request was denied, she did not contact Sandhills and inform them that she would return to work for the 1998–1999 school year. By not returning to Sandhills when she was informed that she could not have an additional leave of absence, Ms. Jenkins effectively resigned from her position at Sandhills.

In addition, Ms. Jenkins provides no factual basis to support her claim that she was demoted to a part-time employee. Ms. Jenkins is apparently relying on the Adjunct Faculty Welcome Letter she received to support her claim that she was demoted from probationary instructor to adjunct faculty member. However, there is no evidence that Ms. Jenkins was ever employed by Sandhills as a adjunct faculty member. To the contrary, the evidence before the Court is that Dr. Dempsey explained to Ms. Jenkins that she was not ever employed as an adjunct faculty member and that the Adjunct Faculty Welcome Letter had been sent to her as the result of a clerical error.

Furthermore, Ms. Jenkins has not presented any evidence that there were white employees who received performance evaluations while Ms. Jenkins did not receive her evaluation for the 1996–1997 school year. Ms. Jenkins does not provide the names of any faculty members who did or did not receive evaluations. She merely speculates that she did not receive an evaluation while other employees did receive evaluations. Ms. Jenkins also has not presented any evidence to support her assertion that her conflicts with her students were investigated in a manner different than investigations of any other faculty members. In fact, Ms. Jenkins has not provided the names of any other faculty members who were investigated because of student complaints.

Finally, Sandhills has provided non-discriminatory reasons why Ms. Jenkins was not hired as the Bookstore Manager and has addressed Ms. Jenkins' assertion that her probationary status was extended be-

cause of her race. Sandhills has stated that the individual hired for the Bookstore Manager position had served as the Assistant Manager of the Bookstore for four years preceding her employment as the Manager.

With regard to extending her probationary status, Sandhills advised Ms. Jenkins that it was done so because she needed to (1) "make satisfactory progress in establishing and maintaining positive and effective relationships" with students and (2) "demonstrate an enthusiastic commitment to teach English 060, Speaking English Well." [Doc. # 90, ex. 1]. In addition, President Dempsey informed Ms. Jenkins in March 1999 that two other employees have had their probationary status extended in the recent past, and those two employees were white.

Even if a prima facie case of discrimination had been presented, Ms. Jenkins offers no evidence to dispute Sandhills' explanation of why she was not hired for the Bookstore Manager position or the fact that her probationary status was not extended based on her race. Ultimately, Ms. Jenkins' accusations of discriminatory conduct amount to mere speculation, and "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989).

A party opposing a motion for summary judgment may not rest upon allegations and pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations and unsupported speculation are insufficient to withstand summary judgment review. *See Evans v. Techs., Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.1996). The Motion for Summary Judgment on the § 1981 claim and the § 1983 claim is GRANTED; the § 1981 claim in Count II and Count XIX of the Second Amended Complaint, and the § 1983 claim in Count II of the Second Amended Complaint are DISMISSED.

3.

■ The next claim that must be considered is Ms. Jenkins's claim pursuant to 42 U.S.C. § 1982, which states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Ms. Jenkins contends that she had property rights in her job, and that her termination therefore unconstitutionally impaired her right to hold property.

This claim involves the same issue as Ms. Jenkins' Fourteenth Amendment Due Process claim;[8] both claims will be addressed simultaneously. The Fourteenth Amendment "does not itself create property rights but rather affords a protection to them. Rather, property rights are determined from sources independent of the Constitution, such as, in this case, state law." *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1438 (4th Cir.1992). The North Carolina Court of Appeals has held that a probationary professor whose employment contract was not renewed "simply had no property right in the position of which he could be constitu-

---

8. Ms. Jenkins also claims that her Fifth Amendment due process right was violated. The Fifth Amendment requires action by the federal government. Ms. Jenkins has not al-

leged that any of the branches or agencies of the federal government have discriminated against her. Count XIV of the Second Amended Complaint is DISMISSED.

tionally deprived." *Ware v. Fort,* 124 N.C.App. 613, 617, 478 S.E.2d 218 (1996).

In this case, Ms. Jenkins was a non-tenured, probationary instructor at Sandhills. Under North Carolina law, she had no property rights in her employment with Sandhills. Ms. Jenkins' Fourteenth Amendment Due Process claim, Count XVI of the Second Amendment Complaint, and her claim pursuant to 42 U.S.C. § 1982, Count XX of the Second Amended Complaint, which both require the existence of a property right, are DISMISSED.

4.

■ Ms. Jenkins has also alleged a violation of 42 U.S.C. § 1985(3), which creates a cause of action for victims injured by the overt acts of "two or more persons ... [who] conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). The law is well settled that to establish a cause of action for conspiracy to deny civil rights under § 1985(3) a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *See Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir.1995). To prove a "conspiracy of two or more persons," the plaintiff must produce evidence demonstrating an agreement between or a "meeting of the minds" of the defendants to violate the plaintiff's constitutional rights. *See id.* at 1377.

In this case, Ms. Jenkins makes conclusory allegations stated in her complaint and other pleadings before the court that the defendants conspired to deprive her of constitutionally protected rights. She has not offered any concrete facts to show that there was an agreement or a meeting of the minds between any of the defendants to violate her constitutional rights. The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.* at 1377. Ms. Jenkins' § 1985(3) claim, Count XXI of the Second Amended Complaint, is DISMISSED. Because Ms. Jenkins' § 1985 claim fails, her § 1986 claim also must be dismissed. *See Trerice v. Summons,* 755 F.2d 1081, 1085 (4th Cir.1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."). Therefore, Count XXII of the Second Amended Complaint is also DISMISSED.

5.

■ The next claim that must be considered is Ms. Jenkins' claim pursuant to 42 U.S.C. § 1994, which abolishes peonage. Ms. Jenkins claims that Sandhills' alleged refusal to provide her with a timely and complete performance evaluation, and Sandhills' extension of her probationary status amounted to peonage. "Peonage" is a system of labor wherein the laborer is compelled to work for his creditor in order to satisfy a debt. *See e.g., Bailey v. Alabama,* 219 U.S. 219, 242, 31 S.Ct. 145, 55 L.Ed. 191 (1911). Ms. Jenkins offers neither allegation nor evidence that she owed any of the defendants a debt or that she was held to compulsory labor. She has failed to state a claim under § 1994, and Count XXIII of the Second Amended Complaint is DISMISSED.

IV.

Ms. Jenkins has named the State of North Carolina as a defendant in this action. In order to assert claims against the

State in this employment discrimination action, Ms. Jenkins would need to be a state employee. The question of whether or not a community college employee is a state employee in the state of North Carolina is a very close question. Provisions of the North Carolina General Statutes, particularly Chapter 126 which establishes the State Personnel System and Chapter 115D which establishes the Community Colleges System, could support a finding on either side of this issue. As demonstrated above, however, each of Ms. Jenkins' federal claims must be dismissed on the merits; thus, it is not necessary to determine whether Ms. Jenkins was a state employee, and whether the State was a proper defendant, in order for all claims against the state to be dismissed. For the reasons discussed in sections III and IV above, the State's Motion to Dismiss or for Summary Judgment is GRANTED as to as to the federal claims, Counts I, II, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV of the Second Amended Complaint.

### V.

Finally, Ms. Jenkins has alleged numerous state constitutional, statutory, and common law violations. Each of the federal claims in the case have been disposed of either through summary judgment or dismissal, and the Court declines to exercise jurisdiction over Ms. Jenkins' state law claims. 28 U.S.C. § 1367(c)(3). Therefore, Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XXVI, and XXVII of the Second Amended Complaint are DISMISSED.

### VI.

To summarize, in Case No. 1:99CV00664, the States' Motion for Summary Judgment or Dismissal [Docs. # 79] is GRANTED as to the federal claims, Counts I, II, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII,

XXIV, XXV of the Second Amended Complaint; the Trustees' and Individual Defendants' Motion for Summary Judgment or Dismissal [Doc. # 90] is GRANTED as to the federal claims, Counts I, II, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV of the Second Amended Complaint; the state law claims, Counts III, IV, V, VI, VII, VIII, IX, X, XI, XII, XXVI, and XXVII of the Second Amended Complaint are DISMISSED because the Court declines to exercise supplemental jurisdiction, and The remaining motions [Docs. # 6, 14, 19, 30, 38, 43, 47, 60, and 84] are DENIED as MOOT.

In Case No. 1:00CV00166, the State's Motion for Summary Judgment or Dismissal [Doc. # 15] is GRANTED, the Trustees' and Individual Defendants' Motion for Summary Judgment or Dismissal [Doc. # 26] is GRANTED, the Trustees' Motion to Dismiss [Doc. # 20] is DENIED as MOOT, and Ms. Jenkins' Motion to Dismiss [Doc. # 7] is DENIED as MOOT.