**William A. NEWBY, Plaintiff,**

v.

**Christine Todd WHITMAN, Administrator, United States Environmental Protection Agency, Defendant.**

**No. 1:02CV00841.**

United States District Court, M.D. North Carolina.

Oct. 14, 2004.

See also, 135 F.3d 777.

David G. Schiller, Cary, NC, for Plaintiff.

Lynne P. Klauer, Office of U.S. Attorney, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before this Court pursuant to Defendant's Motion to Dismiss and for Summary Judgment [Document # 15]. Plaintiff William A. Newby ("Plaintiff" or "Mr. Newby") filed suit in this case against Defendant Christine Todd Whitman as Administrator of the Environmental Protection Agency ("Defendant" or "EPA"), alleging discrimination in employment on the basis of a disability in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, discrimination in employment on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Section 501 of the Rehabilitation Act, and the ADEA. Specifically, Plaintiff claims that he suffers from a disability based on anxiety, depression, stress and hypertension, and that Defendant's failure to reassign him and failure to promote him constitute discrimination and retaliation in violation of the Rehabilitation Act, the ADEA, and Title VII. For the reasons stated below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. As to all of the claims that survive Defendant's Motion to Dismiss, Defendant's Motion for Summary Judgment is GRANTED.

## I. FACTUAL HISTORY [1]

Since 1985, Plaintiff has been employed as a Contract Specialist with the United States Environmental Protection Agency ("EPA") in Research Triangle Park ("RTP"), North Carolina. In 1988, Plaintiff was promoted from level GS–9 to level GS–11. Plaintiff's position would allow him to be promoted as high as level GS–12 noncompetitively, but he has not been promoted past the GS–11 level.

From 1991 to 1993, Plaintiff, acting as a "whistle-blower," reported certain contract irregularities and questionable practices to the EPA Office of Inspector General in RTP. During that time, Plaintiff was subjected to discipline and criticism by his supervisors, including a "minimally satisfactory" rating on his 1992 performance evaluation. This situation was investigated by the Office of Special Counsel, and in October 1994, the Office of Special Counsel concluded that there was significant evidence of abuse of authority and harassment by EPA managers against employees who criticized the managers or department policies. As a result, the Office of Special

---

**1.** As is appropriate on a Motion for Summary Judgment, the facts are presented in the light most favorable to Plaintiff based on the evidence before the Court. The Court notes that Plaintiff's medical records and personnel records were submitted as exhibits to Defendant's Memorandum in Support of Motion to Dismiss and for Summary Judgment [Document # 18], and the Court will reference those documents as necessary. Plaintiff has not presented any legitimate, well-grounded basis to challenge those documents, and the Court rejects Plaintiff's contention that the Court should not consider all of the evidence presented.

Counsel recommended that the poor performance evaluation that Mr. Newby received in 1992 be removed from his file.

During this period, on August 18, 1992, Mr. Newby had an encounter with Ralph Kirby, one of his supervisors. During that encounter, Mr. Kirby admonished Mr. Newby loudly and the admonishment was overheard by several other employees. Mr. Newby contends that as a result of this encounter, he suffered anxiety, stress and hypertension. Mr. Newby filed a claim with the Office of Worker's Compensation Programs ("OWCP"), which initially denied the claim. However, in January 1995, the OWCP reversed its decision and allowed the claim, finding that "an emotional reaction to an admonishment, that is witnessed, is considered in the performance of duty, and is covered under the Act." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. N.)

In 1995 and 1996, Plaintiff filed additional claims with the Office of Special Counsel and Merit Systems Protection Board, alleging that he had been subjected to "intolerable working conditions" as a result of his whistle-blowing activities. These "intolerable working conditions" included EPA's refusal to reassign Plaintiff and EPA's failure to promote Plaintiff to the GS–12 level. On July 2, 1996, the Administrative Law Judge in that case determined that EPA's failure to promote Plaintiff was based on Plaintiff's work performance and inability to perform at the higher GS–12 level, and was not based on his whistle-blowing activities. On January 30, 1998, the United States Court of Appeals for the Federal Circuit affirmed this decision, noting that

> [Mr. Newby's] administration actions were often not done in a timely manner, many actions were not conducted independently; modifications often contained "sloppy errors" and missing elements; [Mr. Newby] needed to work harder at researching policies prior to making decisions or recommendations on contractual issues; he needed to be more critical of the quality of some of his documents; and he often made "disparaging comments" about the policies and decisions of the agency and division when telling "outsiders" why specific documentation or revisions were needed. [It was] also noted that [Mr. Newby's] level of performance with respect to two of five rated performance objections would have been unacceptable were he at the [GS–12] level.

*Newby v. EPA,* 135 F.3d 777 (Fed.Cir. 1998). In the proceedings before the Administrative Law Judge, Mr. James Kempf, who was Mr. Newby's supervisor, testified that he did not promote Mr. Newby in 1993 or 1994 because "he was not doing a great job doing his assigned GS–11 duties" and because "he was not working at the GS–12 level." This was significant given that Mr. Kempf was not involved in any of the alleged irregularities or management problems about which Mr. Newby complained. In addition, Mr. Newby's supervisor from 1985–1991, Mr. Honeycutt, testified that although Mr. Newby was "competent and hardworking," he had "never been an above-average employee." Based upon this evidence, the Federal Circuit affirmed the Board's decision.

Mr. Newby thus fully litigated his claim that EPA's failure to promote him was due to his "whistle-blowing" activity. Mr. Newby also fully litigated his Worker's Compensation claim, ultimately receiving benefits for his stress, anxiety, and hypertension. In the present civil action, Mr. Newby does not bring discrimination or retaliation claims based upon his "whistle-blower" actions or the filing of his Worker's Compensation claim. Instead, Mr. Newby's present claims arise out of subsequent events in 1995 and 1996.

The first of these events occurred in March 1995, when Mr. Newby requested a "Reassignment for Health Concerns." In his request, Mr. Newby stated that his "current work environment has been and continues to be harmful to my health." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. F.) Mr. Newby further stated that the reassignment "would eliminate the continuing stress that I suffer as a result of having to continue to work with individuals involved in the prior [whistle-blower] retaliation against me." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. F.) Ms. Betty Bailey, Director of the Office of Acquisition Management, responded to that request and informed Mr. Newby that his division faced a large and important workload, and "it would not be in the best interests of the organization for me to increase the workload on other CMD–RTP employees in meeting your needs. However, if there is a vacant position at RTP for which you qualify, I will do everything I can to help you obtain that position." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. F.) Ms. Bailey also noted that "[r]elative to your health concerns, I recommend that you contact Mr. Randy M. Brady at the RTP Human Resources Office for the range of options available. This is especially important if you feel you are unable to fully perform your duties." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. F.)

The second incident involved Mr. Newby's subsequent meeting with Personnel Director Randy Brady on May 16, 1996. Plaintiff contends that during that meeting, Director Brady refused to consider Mr. Newby's request for a transfer and threatened to require him to undergo a "fitness for duty" evaluation. Plaintiff also contends that Director Brady wrote letters to the Office of Worker's Compensation Program to attempt to have Plaintiff's Worker's Compensation benefits denied or terminated. Although Director Brady did send letters contesting Plaintiff's eligibility for Worker's Compensation, those letters did not ultimately affect Plaintiff's benefits.

As a result of this May 16, 1996 meeting and Director Brady's actions, Plaintiff filed a formal EEO discrimination complaint on August 26, 1996 alleging that EPA had discriminated against him by failing to provide a "reasonable accommodation" (his request for a reassignment) and by retaliating against him for requesting accommodation (by threatening his job and by sending letters to attempt to terminate his Worker's Compensation benefits). A hearing on Plaintiff's complaint was held before an Administrative Law Judge on June 13, 2000. On November 9, 2000, the Administrative Law Judge ruled that Plaintiff had failed to establish that he was discriminated against on the basis of disability, age, or retaliation when Director Brady denied his request for a reassignment and allegedly threatened to terminate his employment.

Plaintiff filed this lawsuit on October 1, 2002, alleging that he was discriminated against on the basis of disability and age, and in retaliation for requesting a "reasonable accommodation." In his Complaint, Plaintiff brings claims for: (1) Disability discrimination based on Defendant's refusal to transfer him in 1995 and 1996; (2) Age discrimination based on Defendant's refusal to transfer him and refusal to promote him to the GS–12 level in 1995 and 1996, and (3) Retaliation based on the following incidents: Defendant's refusal to promote him to the GS–12 level after 1996, Director Brady's efforts to have the Office of Worker's Compensation deny his claim for benefits, Director Brady's alleged threat to subject Plaintiff to a "fitness for duty" evaluation, limits on his bathroom

breaks, and a reprimand in 1998 for not reading e-mails while he was out of the office following eye surgery.

Defendant moves to dismiss certain of Plaintiff's claims and moves for summary judgment as to all of the claims. Defendant first contends that the scope of Plaintiff's claims should be limited to the claims properly presented in Plaintiff's EEO case related solely to the May 16, 1996 meeting with Supervisor Brady. Defendant next contends that as to the claims properly before the Court, Plaintiff has failed to establish sufficient evidence or material questions of fact, and Defendant is entitled to judgment as a matter of law. The Court will consider each of these contentions in turn.

## II. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■ Defendant moves to dismiss certain of Plaintiff's claims related to events outside the May, 16, 1996 meeting with Supervisor Brady because they were not presented as part of Plaintiff's EEO case. As a federal employee, Plaintiff was required to exhaust his administrative remedies by contacting an EEO counselor and filing a formal EEO complaint before filing his discrimination suit in federal court. "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 132 (4th Cir.2002). Under the law of this circuit, "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (quoting *Chisholm v. United States Postal Service,* 665 F.2d 482, 491 (4th Cir.1981)). In addition, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 963 (4th Cir.1996).

Based on this legal standard, the Court must first determine the scope of Plaintiff's EEO charge, and must then determine whether Plaintiff has asserted any additional matters beyond those included in the EEO charge. If Plaintiff has asserted additional matters outside the scope of his EEO charge, the Court must then determine whether those claims are reasonably related to the original EEO complaint or were developed by reasonable investigation of the original EEO complaint. The Court will therefore consider each of these issues in turn.

### A. Scope of Plaintiff's EEO Charge

In this case, Plaintiff timely filed an EEO complaint alleging discrimination on the basis of age, disability, and retaliation, all based on actions by Director Brady at the May 16, 1996 meeting. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. A.) Specifically, Plaintiff claimed in his EEO complaint that Director Brady discriminated against him by refusing to reassign him, and retaliated against him by threatening to terminate him or subject him to a "fitness for duty" evaluation, and by sending letters contesting Mr. Newby's Worker's Compensation claim. (Id.) On March 17, 1997, EPA advised Mr. Newby that his discrimination complaint was accepted for investigation. The issue accepted for investigation was presented as:

discrimination based on medical disability (stress-related injury) under Section 501 of the Rehabilitation Act of 1973, as amended, and age (over 40) under the

Age Discrimination in Employment Act of 1967, as amended, when: On May 16, 1996, Randy Brady, Director, Human Resource Management Division, Office of Administration and Resources Management denied [Mr. Newby's] request for a reassignment, and instead, threatened to terminate [his] employment.

(Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. A.) Plaintiff did not appeal or contest this statement of the issue. However, during the course of the EEO proceedings, Plaintiff attempted to include other matters as additional evidence or instances of discrimination and retaliation. The Defendant objected to this attempt by Plaintiff, and as a result, the Administrative Law Judge assigned to Plaintiff's case found that the accepted issue was:

Whether the complainant was discriminated against because of his mental disability (mental stress), age (53), and reprisal (previous EEO participation) when, on May 16, 1996, Randy Brady, Director, Human Resource Management Division of Administration and Resources Management, denied his request for a reassignment and instead, threatened to terminate his employment.

(Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. A.) The Administrative Law Judge determined that "it is clear from the inception of the complainant's contact with the EEO counselor until his filing of the formal complaint, that his allegation has been limited to the events of [May] 16, 1996." (Id.) The Administrative Law Judge also held that "the complainant was provided opportunities to amend his complaint to include other allegations. However, for reasons known only to him, he did not." (Id.)

Based on this evidence and a complete review of Plaintiff's EEO charge, the Court finds that Plaintiff's EEO complaint asserted claims of discrimination on the basis of age, disability or handicap, and reprisal. The EEO complaint therefore clearly covered Plaintiff's request for reassignment, Supervisor Brady's alleged threat to terminate Plaintiff, and Supervisor Brady's efforts to contest Plaintiff's Worker's Compensation benefits. Having defined the scope of Plaintiff's EEO charge, the Court must now determine whether Plaintiff has asserted any additional matters in this civil suit beyond those included in the EEO charge.

### B. Plaintiff's Assertion of Additional Claims Before The Court

Defendant contends that Plaintiff has now asserted the following additional issues that were not included in the EEO charge: (1) allegations regarding his encounter with Supervisor Ralph Kirby in 1992, which caused Plaintiff to seek Worker's Compensation Benefits; (2) allegations of additional instances of EPA's refusal to reassign or transfer Plaintiff, including Ms. Bailey's denial of his "Reassignment for Health Concerns" and Mr. William Laxton's refusal to become involved in Plaintiff's request for reassignment; (3) allegations that in January 1996, his supervisor threatened to restrict his bathroom breaks; (4) allegations that on January 7, 1999, he received a letter of warning for failing to timely respond to his e-mail, which he was unable to do because he was recovering from eye surgery; and (5) allegations regarding Defendant's failure to promote Plaintiff to the GS–12 level. Particularly with regard to the January 7, 1999 warning letter issued while Mr. Newby was recovering from eye surgery, Defendant notes that Plaintiff raised this matter with an EEO counselor in a separate proceeding, but abandoned it without filing a formal complaint, and that Plaintiff has therefore failed to exhaust his administrative remedies with respect to that claim. Defendant further contends that all of the

additional issues were outside the scope of the EEO charge, and Plaintiff has therefore failed to exhaust his administrative remedies with respect to each of these listed claims.

 In response, Plaintiff contends that all of the allegations should be considered as part of a "continuing violation," so as to bring all of his claims within the scope of the EEO charge. Under the "continuing violation" doctrine, if one act in a history of discriminatory conduct falls within the charge filing period, then acts related to that act may also be considered. However, the Supreme Court recently made clear that unless the plaintiff alleges a hostile work environment (which Mr. Newby did not do), each instance of discrimination is a discrete act that must be considered separately. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072–73, 153 L.Ed.2d 106 (2002); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 293 (4th Cir.2004); *see also Lewis v. Norfolk Southern Corp.*, 271 F.Supp.2d 807, 813 (E.D.Va.2003) (holding that job transfer, denial of promotion, denial of pay raise, and negative performance review were discrete acts that did not fall within the continuing violation doctrine); *Janey v. N. Hess Sons, Inc.*, 268 F.Supp.2d 616, 623 (D.Md.2003) (holding that "the continuing violation doctrine does not apply to discrete discriminatory actions, such as promotions and transfers"). Therefore, the Court finds that the "continuing violation" doctrine does not apply to Plaintiff's claims, and each allegation of discrimination or retaliation by Plaintiff must be considered as a discrete act.

The Court will therefore consider each of the additional allegations in turn to determine whether those claims are properly before the Court as being reasonably related to the original EEO complaint or developed by reasonable investigation of the original complaint.

### C. Relationship Between EEO Charges and Additional Claims

#### (1) Encounter With Supervisor Ralph Kirby in 1992

] As discussed above, Mr. Newby had an encounter with his then-supervisor, Ralph Kirby, on August 18, 1992, four years before the filing of the EEO charge in the present action. During that encounter, Mr. Kirby admonished Mr. Newby loudly and the admonishment was overheard by several other employees. As a result of this encounter, Mr. Newby suffered anxiety, stress and hypertension, and ultimately obtained Worker's Compensation Benefits. Mr. Newby, however, did not include any claims regarding this encounter in his EEO charge. The Court notes that Plaintiff's allegations regarding this incident are included as background information in Plaintiff's Complaint, but they are not included as the basis of his present claims. *Cf. Evans*, 80 F.3d at 962 ("Charges filed outside [the required] time frame are barred, but a discriminatory allegation may still constitute relevant background evidence for valid claims."). In this situation, this Court concludes that any discrimination or retaliation claims related to the 1992 encounter with Mr. Kirby may be considered as background information, but are not properly before the Court as separate claims. Therefore, Defendant's Motion to Dismiss is GRANTED with respect to Plaintiff's assertion of any claims related to the 1992 encounter with Mr. Kirby.

#### (2) Additional Instances of EPA's Refusal to Reassign or Transfer Plaintiff

 Plaintiff's Complaint includes additional instances of EPA's refusal to reassign or transfer Plaintiff, other than the May 16, 1996 meeting with Supervisor Brady. In particular, Plaintiff brings alle-

gations regarding Ms. Bailey's denial of his "Reassignment for Health Concerns" and Mr. William Laxton's refusal to become involved in Plaintiff's request for reassignment. Ms. Bailey denied Mr. Newby's request for a transfer in her letter dated April 6, 1995, and in that letter suggested that Mr. Newby contact Supervisor Brady if Mr. Newby had health-related concerns or was unable to perform his duties. Mr. Newby subsequently discussed his reassignment request with Supervisor Brady. At that time, Mr. Laxton was Supervisor Brady's immediate superior. Immediately after the May 16, 1996 meeting with Supervisor Brady, Mr. Newby and Supervisor Brady separately contacted Mr. Laxton to inform him of the conflict and the surrounding issues.

The Court concludes that Plaintiff has presented evidence to support his claim that Ms. Bailey and Mr. Laxton were directly involved in Plaintiff's request for reassignment and with Supervisor Brady's handling of the situation. Although Plaintiff's EEO charge specifically identified Supervisor Brady's failure to transfer or reassign him, the Court finds that Plaintiff's additional assertions regarding Ms. Bailey's and Mr. Laxton's failure to reassign him are "reasonably related" to his EEO charge. The Court therefore concludes that Plaintiff's claims relating to EPA's general failure to reassign Plaintiff, based on actions by Ms. Bailey, Mr. Laxton and Supervisor Brady, are properly before the Court. Defendant's Motion to Dismiss is DENIED with respect to these claims, and the Court will consider these claims as part of the Court's evaluation of Defendant's Motion for Summary Judgment in Section III of this Memorandum Opinion.

### (3) Restriction on Bathroom Breaks

In his Complaint, Plaintiff alleges that "management" threatened to restrict his bathroom breaks even though "man-

agement" was aware he had kidney problems. However, this allegation was not included in the EEO charge, and apparently occurred in January 1996, eight months before his EEO charge was filed. In Plaintiff's medical records dated January 19, 1996, Plaintiff's psychiatrist noted that Plaintiff "had an additional stressor of being confronted with excessive bathroom breaks. He did have the union representative accompany him to a meeting with his supervisor and that person's higher level supervisor. These issues are being addressed at the appropriate level and the patient is not overly focusing on that particular encounter." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. I.) Plaintiff has not presented any additional information regarding this claim. Thus, the alleged discrimination was a separate incident that apparently occurred prior to the meeting with Supervisor Brady in May 1996 and the filing of the EEO charge in August 1996.

In this situation, the Court concludes that the alleged restriction on Plaintiff's breaks is not "reasonably related" to the allegations in Plaintiff's EEO charge. Because Plaintiff did not bring a timely EEO charge with respect to the alleged restriction on his breaks, Plaintiff failed to exhaust his administrative remedies as to that claim, and that claim is not properly before the Court, except as part of the background information for Plaintiff's claims. Therefore, with respect to Plaintiff's claim that Defendant improperly limited his bathroom breaks, Defendant's Motion to Dismiss is GRANTED.

### (4) Warning for Failure to Timely Respond to E-mail

Plaintiff's Complaint also alleges that he was given a warning letter in 1998 for failing to timely respond to e-mail,

which he was unable to do because he was recovering from eye surgery. In connection with his eye surgery, Mr. Newby also complains that his request for a larger computer screen was not fulfilled until almost a year after his surgery. Although Plaintiff's EEO charge described his disability as stress and "mental handicap," it did not include any allegations regarding a vision-related disability. Furthermore, the EEO charge did not allege or even mention any discrimination in connection with warning letters, e-mails, or failure to provide computer equipment.

Plaintiff now appears to argue that his claims include disability and age discrimination claims based on events connected to his vision problems. To the extent that Plaintiff complains of a subsequent instance of disability discrimination or age discrimination, he should have pursued an EEO charge and exhausted his administrative remedies for that claim. Since he did not, any claims he may bring for disability discrimination or age discrimination related to the 1998 warning letter or delay in receiving computer equipment are not properly before the Court.

██ However, Plaintiff also alleges that the 1998 warning letter was motivated by retaliation against him for engaging in a protected activity by filing his EEO charge in August 1996. Defendant contends that this claim of retaliation is not included in Plaintiff's EEO charge. However, courts have consistently held that retaliation claims may be raised for the first time in federal court if the retaliation occurred after the filing of the administrative charge. *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir.1992); *McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 482 (7th Cir.1996) (holding that alleged retaliatory actions that occurred after the filing of the EEOC charge could be brought in federal court, but that alleged retaliatory actions that occurred prior to

the filing of the EEOC charge should have been included in the administrative charge and could not serve as the basis of the retaliation claim).

Based on these standards, the Court finds that Plaintiff's allegations regarding the 1998 warning letter are properly before the Court, but only to the extent that Plaintiff contends these actions were taken in retaliation for his prior EEO charge. Thus, to the extent Plaintiff alleges that the 1998 warning letter and the delay in obtaining equipment were based on disability discrimination or age discrimination, Defendant's Motion to Dismiss is GRANTED because Plaintiff failed to exhaust his administrative remedies as to these claims. However, to the extent Plaintiff alleges that the 1998 warning letter was motivated by retaliation against him for filing an EEO charge, Defendant's Motion to Dismiss is DENIED, and the Court will consider that claim as part of the evaluation of Defendant's Motion for Summary Judgment in Section III of this Memorandum Opinion.

### (5) Failure to Promote Plaintiff to the GS–12 Level

Finally, Plaintiff's Complaint includes allegations that EPA failed to promote him to the GS–12 level. Defendant contends that this "failure to promote" claim is not reasonably related to the claims included in Plaintiff's EEO charge. As noted above, the EEO charge discussed the denial of Plaintiff's transfer request, the alleged threat to terminate Plaintiff, and the efforts to contest Plaintiff's Worker's Compensation benefits. In similar circumstances, several courts have concluded that a "failure to promote" claim must be included in the administrative charge and is not reasonably related to other types of alleged discriminatory conduct. *See, e.g., Barakat v. Taco Bell, Inc.,* 970 F.Supp.

634, 638 (N.D.Ill.1997) ("A party must expressly mention failures to promote in the EEOC complaint to have a basis on which to infer that such claim was being advanced."); *Khoury v. Meserve*, 268 F.Supp.2d 600, 607 (D.Md.2003) (dismissing Plaintiff's claims of discriminatory failure to promote where Plaintiff's EEO complaint included allegations regarding discriminatory performance appraisals and a hostile work environment that included efforts to prevent her from competing for a promotion, since plaintiff did not amend her EEO complaint or protest the agency's framing of the claim, and since she did not allege an "independent unfair denial of promotion claim"), *aff'd*, 85 Fed.Appx. 960 (4th Cir.2004); *Egan v. Palos Community Hospital*, 889 F.Supp. 331, 338 (N.D.Ill. 1995) (holding that plaintiff's failure-to-promote claim was outside the scope of her EEOC charge where the EEOC charge "expressly refers to demotions, pay cuts, loss of responsibilities and benefits, and verbal harassment, [but] there is no express mention of any failures to promote."); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir.1996) (holding that where plaintiff alleged discrimination in the apprenticeship program, harassment, training and pay, the plaintiff had failed to exhaust her administrative remedies with respect to her failure-to-promote claim); *see also Jenkins v. Trustees of Sandhills Community College*, 259 F.Supp.2d 432, 441 (M.D.N.C.2003) (dismissing plaintiff's claims related to termination, demotion, and failure to hire where EEOC charge mentioned denial of her performance evaluation, extension of probationary status, and retaliation), *aff'd*, 80· Fed.Appx. 819 (4th Cir.2003).

■ The Court declines to adopt a per se rule, but holds that in the circumstances of this case, Plaintiff's allegations regarding discriminatory failure to promote are not "reasonably related" to the allegations in Plaintiff's EEO complaint, which cov-

ered only failure to reassign, an alleged threat to terminate Plaintiff, and letters contesting Plaintiff's Worker's Compensation benefits. Thus, Plaintiff failed to exhaust his administrative remedies with respect to the failure to promote claim.

However, as noted above, retaliation claims may be raised for the first time in federal court if the retaliation occurred after the filing of the administrative charge. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). Plaintiff's Complaint includes claims against EPA for failing to promote him to the GS–12 level after 1996 in retaliation for filing his EEO charge. Plaintiff need not exhaust his administrative remedies with respect to this retaliation claim, and this retaliation claim is properly before the Court for consideration on Summary Judgment.

Thus, to the extent Plaintiff alleges that EPA's failure to promote him was based on disability discrimination or age discrimination, those claims were not included in Plaintiff's EEO charge, Plaintiff failed to exhaust his administrative remedies as to those claims, and Defendant's Motion to Dismiss is GRANTED. However, to the extent Plaintiff alleges that EPA's failure to promote him was based on retaliation against him for filing the EEO charge, Plaintiff may bring that retaliation claim for the first time in federal court, and Defendant's Motion to Dismiss is DENIED. The Court will therefore consider the retaliatory failure-to-promote claim below in evaluating Defendant's Motion for Summary Judgment.

**D. Conclusion as to Defendant's Motion to Dismiss**

For the reasons discussed above, Defendant's Motion to Dismiss is GRANTED in part because Plaintiff failed to exhaust his administrative remedies with respect to the following claims: (1) allegations re-

garding Plaintiff's encounter with Supervisor Ralph Kirby in 1992; (2) allegations that in January 1996, his supervisor threatened to restrict his bathroom breaks; (3) allegations regarding disability discrimination or age discrimination based on a warning letter for failing to read his e-mails and similar issues following his eye surgery; and (4) allegations regarding disability discrimination or age discrimination based on Defendant's failure to promote him to the GS–12 level.

The remainder of Defendant's Motion to Dismiss is DENIED. As a result, the following three claims are properly before this Court: (1) Disability discrimination based on EPA's refusal to reassign Plaintiff; (2) Age discrimination based on EPA's refusal to reassign Plaintiff; and (3) Retaliation based on EPA's refusal to promote Plaintiff to the GS–12 level, Director Brady's alleged threat to terminate Plaintiff, Director Brady's letters contesting Plaintiff's Worker's Compensation claim, and the January 7, 1999 letter of warning for failing to timely respond to e-mail. The Court will now turn to a consideration of Defendant's Motion for Summary Judgment as to each of these claims.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There can be "no genuine issue as to any material fact" if the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case," since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs.*, 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 56 (4th Cir.1995). The moving party bears the initial "burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992) (en banc). Once the moving party has met this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* In so doing, the nonmoving party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510; *Catawba Indian Tribe*, 978 F.2d at 1339. In other words, the nonmoving par-

ty must show "more than ... some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Catawba Indian Tribe,* 978 F.2d at 1339.

■ In addition, "[w]hile courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans,* 80 F.3d at 958–59.

Based on this standard, the Court will now consider in turn each of the three claims brought by Plaintiff which are properly before the Court as discussed above in Section II of this Memorandum Opinion: (1) Disability discrimination in violation of the Rehabilitation Act based on EPA's refusal to reassign Plaintiff; (2) Age discrimination in violation of the ADEA based on EPA's refusal to reassign Plaintiff; and (3) Retaliation in violation of Title VII, the Rehabilitation Act, and the ADEA, based on EPA's refusal to promote Plaintiff to the GS–12 level, Director Brady's alleged threat to terminate Plaintiff, Director Brady's letters contesting Plaintiff's Worker's Compensation claim, and the January 7, 1999 letter of warning for failing to timely respond to e-mail.

### B. Disability Discrimination Claims Under the Rehabilitation Act

Plaintiff claims that Defendant unlawfully discriminated against him on the basis of disability in violation of the Rehabilitation Act. Specifically, Plaintiff alleges that Defendant failed to reasonably accommodate his disability by refusing to transfer or reassign him. (Compl. at 8–9.) Section

501(b) of the Rehabilitation Act provides, in pertinent part, as follows:

> Each department, agency, and instrumentality ... shall ... submit ... an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution.

29 U.S.C. § 791(b).

■ To recover under the Rehabilitation Act, Plaintiff must first prove that he is within the Rehabilitation Act's protected class, that is, Plaintiff must prove that he is disabled within the meaning of the Rehabilitation Act. *See* 29 U.S.C. §§ 791(b), 794(a), (d); *Hooven–Lewis v. Caldera,* 249 F.3d 259, 266–68 (4th Cir.2001); *Walker v. Potter,* 188 F.Supp.2d 590, 595 (D.Md. 2002), *aff'd,* 55 Fed.Appx. 198 (4th Cir. 2003); *Gibson v. Henderson,* 129 F.Supp.2d 890, 897 (M.D.N.C.2001). If an individual establishes that he is disabled, the Rehabilitation Act then requires him to establish that he is "otherwise qualified" to perform the essential functions of the position with or without reasonable accommodation. *Hooven–Lewis v. Caldera,* 249 F.3d 259, 268–69 (4th Cir.2001). In making these determinations, the Court also looks to cases decided under the Americans with Disabilities Act ("ADA") because, as the Fourth Circuit Court of Appeals has explained, the "ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." *Baird v. Rose,* 192 F.3d 462, 468 (4th Cir.1999).

In evaluating Plaintiff's claim under the Rehabilitation Act, the Court must view the evidence in the light most favorable to Plaintiff and must consider whether a reasonable jury could conclude: (1) that Plaintiff was disabled, and (2) that Plaintiff's requested accommodation was rea-

sonable. The Court will consider each of these issues in turn.

### 1. Existence of a Disability

An individual is disabled under the Rehabilitation Act if he "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). In this case, Plaintiff contends that he is disabled under § 705(20)(B)(i), that is, he has impairments that substantially limit at least one of his major life activities. To meet the Rehabilitation Act's definition of a "major life activity," the activity must be one that is "of central importance to daily life." *Toyota Motor Mfg., Ky., Inc., v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). To be "substantially limited" in a major life activity, the plaintiff must be severely restricted in performing the activity. *Id.* at 196–98, 122 S.Ct. at 691. The Supreme Court has held that the ADA (and thus the Rehabilitation Act) is "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197, 122 S.Ct. at 691. In *Rhoads v. FDIC,* 257 F.3d 373 (4th Cir.2001), the Fourth Circuit Court of Appeals held that " '[s]ubstantially limits' means, inter alia, '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.' " *Id.* at 387 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). In summary, therefore, not all impairments qualify as disabilities within the meaning of the Rehabilitation Act.

In determining whether Plaintiff has demonstrated that he is disabled within the meaning of the Rehabilitation Act, this Court must conduct an individualized evaluation of whether Plaintiff's impairments substantially limit Plaintiff in a major life activity. *Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. at 691–92. As the Supreme Court has held, the Rehabilitation Act "requires those 'claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial.' " *Id.* (alterations in original) (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999)). Thus, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Id.* at 198, 122 S.Ct. at 691.

In his Complaint, Plaintiff claims that he suffers from the following impairments: sleep disorder, anxiety, depression, and hypertension. Defendant contends that Plaintiff has failed to show that any of the alleged physical impairments substantially limit him in a major life activity. Plaintiff, however, claims that his impairments substantially limit him in the major life activities of (1) sleep, (2) sexual function, and (3) the ability to perform work. The Court will consider each of these activities in turn.

#### a. Substantial Limitation on Sleeping

With regard to the activity of sleeping, several courts that have considered this issue have concluded that "sleeping" is a major life activity. *See Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir.1999) ("We hold that sleeping is a major life activity."); *Equal Employment Opportunity Commission v. Sara Lee Corp.,* 237 F.3d 349, 352 (4th Cir.2001) (assuming that sleeping is a major life activity). To

establish a substantial limitation on the major life activity of sleeping, an individual must establish that he was "unable to sleep or was significantly restricted as to the condition, manner or duration of [his] ability to sleep as compared to the average person in the general population," taking into consideration "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Pack*, 166 F.3d at 1305–06. If a plaintiff does not allege that he was completely unable to sleep, the Court must consider the plaintiff's ability to sleep as compared to the average person in the general population. *Id.* The Court of Appeals for the Fourth Circuit has held that the plaintiff must prove that his "lack of sleep was worse than the quality of sleep of the general population." *Sara Lee*, 237 F.3d at 352; *see also* EEOC Guidance on Psychiatric Disabilities and the Americans with Disabilities Act at 5 n. 16 (Mar. 27, 1997) ("Sleeping is not substantially limited just because an individual has some trouble getting to sleep or sleeps fitfully.").

In the present case, Plaintiff contends that he suffered from "middle insomnia" causing him to awaken in the middle of the night, and that at times he only got three to four hours of sleep. However, Plaintiff does not present any evidence regarding the frequency or severity of his sleep disturbances. More importantly, Plaintiff does not present any evidence to show that his lack of sleep was worse than the quality of sleep of the general population.

Plaintiff's medical records establish that he did suffer from occasional "middle insomnia" during 1995, but that it was quickly improving and was not a significant problem. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18] GE I, Records of Dr. Holmes.) For example, in a Duke University Health Psychology form on April 25, 1996, Plaintiff was asked to review a list of 90 problems or concerns and report how much he was distressed by each problem or concern on a scale of 0 to 4. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]GE H, Records of Dr. Spira.) As to "[a]wakening in the early morning," Plaintiff marked a "2" to indicate he was "moderately" affected by this concern. As to "[s]leep that is restless or disturbed," Plaintiff marked a "1" to indicate that he was "a little bit" affected by the concern. Plaintiff did not mark any sleep concern as a 3 ("Quite a bit") or a 4 ("Extremely"). (Id.) A few weeks after reporting his "middle insomnia" to Dr. Holmes in December 1995, Plaintiff reported that "he is still having some middle insomnia, although this has improved." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18] GE I, Records of Dr. Holmes (January 19, 1996).) During visits to Dr. Sheline in 1997, Plaintiff told his doctor that his insomnia had improved, that he was able to sleep through the night, and that he "rarely has insomnia." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18] GE G, Records of Dr. Sheline) ("10/14/97 . . . Less difficulty sleeping reported."; "9/11/97 . . . He says he rarely has insomnia."). Based on this evidence, the Court concludes that Plaintiff has failed to present evidence to show that his sleep problems were severe, permanent or substantial, or that his sleep was any worse than the general population. Therefore, the Court finds that Plaintiff failed to show that his impairments substantially limited him in the major life activity of sleep.

b. Substantial Limitation on Sexual Function

Plaintiff also alleges that he was disabled because his medication and depres-

sion caused sexual problems that substantially limited his ability to engage in the major life activity of sexual relations. In *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court held that "[r]eproduction falls well within the phrase 'major life activity'" because "[r]eproduction and the sexual dynamics surrounding it are central to the life process itself." *Id.* at 638, 118 S.Ct. at 2205. The Supreme Court did not directly address whether sexual activity is itself a major life activity, but since *Bragdon,* several other courts have concluded that sexual activity is a major life activity. *See McAlindin v. County of San Diego,* 192 F.3d 1226, 1234 (9th Cir.1999) ("We conclude that engaging in sexual relations, just like procreation, is a major life activity."), *amended,* 201 F.3d 1211 (9th Cir. 2000); *Sussle v. Sirina Protection Systems Corp.,* 269 F.Supp.2d 285, 299 (S.D.N.Y.2003) ("Engaging in sexual relations is therefore a major life activity."). *But see Contreras v. Suncast Corp.,* 237 F.3d 756, 764 (7th Cir.2001) (noting that the Seventh Circuit had not established a rule that sexual relations are a major life activity).

Prior to the Supreme Court's decision in *Bragdon,* the Court of Appeals for the Fourth Circuit stated that "we are not convinced that engaging in intimate sexual relations falls within the statutory rubric of the major life activities." *Runnebaum v. NationsBank of Maryland,* 123 F.3d 156, 170–71 (4th Cir.1997). Given this statement, it is unclear whether the Fourth Circuit would now recognize sexual relations as a major life activity in light of *Bragdon.* However, this Court need not reach a definitive conclusion on this issue to address the present case. Therefore, for purposes of this opinion, this Court, in view of *Runnebaum,* will assume (without deciding) that engaging in sexual relations is a major life activity under the Rehabilitation Act.

In the present case, Plaintiff's medical records do reflect that he suffered from some sexual dysfunction in 1995 and 1996, apparently related to his medications, as well as psychological factors involving Mr. Newby's anxiety and his relationship with his wife. However, Plaintiff has not presented any evidence to show that his impairment was substantial or permanent. For example, in the Duke University Health Psychology form on April 25, 1996, Plaintiff reviewed a list of 90 problems or concerns that included questions regarding sexual activity. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]GE H, Records of Dr. Spira.) As to "[l]oss of sexual interest or pleasure" Plaintiff marked a "2" to indicate he was "moderately" affected by this concern. On October 8, 1996, he reported to Dr. Sheline that he was taking medication to treat his sexual dysfunction, but it was "too early" to assess the results. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]GE G, Records of Dr. Sheline.) Plaintiff has not presented any additional information regarding the nature, duration or severity of this impairment. More importantly, Plaintiff has not presented any evidence to establish that his limitations were any worse than the general population. Plaintiff simply asserts that "anti-hypertension medications frequently cause sexual dysfunction and that has been my experience with every such drug I've tried." (Aff. of William Newby [Doc. # 20] at 4.) The Court is not persuaded that the sexual side effects that Plaintiff encountered, which Plaintiff himself contends occur frequently in the general population as a result of common medications, create the existence of a "disability" under the Rehabilitation Act. The evidence presented here is insufficient to establish that Plaintiff suffers from an impairment that is significantly more severe than the general population. *Cf. Contrer-*

*as,* 237 F.3d at 764; *Sussle,* 269 F.Supp.2d at 306. Therefore, the Court concludes that Plaintiff has failed to present sufficient evidence to support a finding that he is substantially limited in the major life activity of sexual relations.

### c. Substantial Limitation on Working

█ Finally, Mr. Newby alleges that he was impaired in the major life activity of working. To show that an impairment substantially limits his ability to work, a plaintiff must "show not merely that [his impairment] made [him] incapable of satisfying the singular demands of a particular job, but that it foreclosed generally [his opportunity to obtain] the type of employment involved." *Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.1994) (internal citations omitted). "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999).

█ In this case, Plaintiff contends that he "was unable to work free of his disability in a wide range of jobs in CMD [the Contracts Management Division]— those under Sutton, Bowers, Kirby." (Pl.'s Mem. of Law in Response to Def.'s Mot. for Sum. J. [Doc. # 25] at 21). However, it is well-established that the inability to work with particular co-workers or supervisors does not create a substantial limitation on the major life activity of working. *See* 29 CFR 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."); *Weiler v. Household Finance Corporation,* 101 F.3d 519, 524–25 (7th Cir.1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxi-

ety and stress" and if plaintiff "can do the same job for another supervisor, she can do the job, and does not qualify under the ADA"); *Siemon v. AT & T Corp.,* 117 F.3d 1173, 1176 (10th Cir.1997) (holding that a mental impairment preventing plaintiff from "working under a few supervisors within the organizational structure of one major corporation ... is far too narrow to constitute a 'class of jobs.' "); *Palmer v. Circuit Court of Cook County,* 117 F.3d 351 (7th Cir.1997) ("[A] personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, ... even if it produces anxiety and depression, as such conflicts often do."); *Adams v. Alderson,* 723 F.Supp. 1531, 1532 (D.D.C.1989) (holding that a personality conflict with an antagonizing supervisor was not a disability under the ADA), *aff'd* 1990 WL 45737 (D.C.Cir. 1990). Therefore, viewing the evidence in the light most favorable to the Plaintiff, this Court finds that Plaintiff has failed to present sufficient evidence to support a finding that he is substantially limited in the major life activity of working.

Based on all of the evidence and allegations considered above, this Court therefore concludes as a matter of law that Plaintiff has failed to establish that he suffered from a disability under the Rehabilitation Act. Because Plaintiff cannot establish that he has a disability within the meaning of the Rehabilitation Act, Plaintiff's claim that EPA failed to reasonably accommodate his disability would also fail as a matter of law. *See Rhoads,* 257 F.3d at 391 (granting summary judgment to the employer on the plaintiff's reasonable-accommodation claim where the plaintiff failed to prove she was disabled within the meaning of the ADA). Moreover, as discussed below, even if Plaintiff could establish the existence of a disability under the Rehabilitation Act, Plaintiff cannot estab-

lish that the accommodation he requested was in fact "reasonable."

### 2. Transfer or Reassignment as a Reasonable Accommodation

 To establish a claim under the Rehabilitation Act, Plaintiff must establish that he is "otherwise qualified" to perform the essential functions of the position with or without reasonable accommodation. Assuming that a disability existed, Plaintiff here contends that Defendant violated the Rehabilitation Act by failing to provide a reasonable accommodation when EPA failed to reassign him to a position in a different group or department in order to alleviate his work-related stress and anxiety. While his supervisors indicated their willingness on numerous occasions to support Plaintiff if he chose to apply for another position at EPA or arrange an Intergovernmental Personnel Act ("IPA") placement with a private organization, Plaintiff contends that EPA nevertheless failed to accommodate him by failing to locate, arrange for and secure an alternative placement for him away from his current supervisors. Under the applicable regulations, a reassignment is considered a reasonable accommodation under the Rehabilitation Act when an employee "becomes unable to perform the essential functions of his or her position." 29 CFR 1614.203(g). However, an employer is not required to provide an aggravation-free or stress-free environment, or to reassign an employee away from any supervisor or coworker who may cause stress or conflict. *See, e.g., Cannice v. Norwest Bank Iowa, N.A.,* 189 F.3d 723, 728 (8th Cir.1999) ("We do not believe, however, that the obligation to make reasonable accommodation extends to providing an aggravation-free environment."). *Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 581 (3d Cir. 1998) (holding that it is "wholly impractical" to require an employer to transfer an employee to another department "whenev-

er he becomes 'stressed out' by a coworker or supervisor").

The Court of Appeals for the Third Circuit has also noted that "by asking to be transferred away from individuals who cause him prolonged and inordinate stress, [the plaintiff] is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility. Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to non-disabled persons." *Gaul,* 134 F.3d at 581 (internal quotations omitted); *see also Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 384 (2d Cir.1996) (holding that the failure to reassign an employee to a different supervisor did not violate the reasonable accommodation requirement of the ADA and the Rehabilitation Act).

 In this case, Plaintiff does not contend that a reassignment was necessary because he was unable to perform the essential functions of his position. In fact, he has continued to maintain that he was able to perform his job successfully, but that he wanted a reassignment to alleviate the stress and anxiety caused by his current supervisors. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18]Ex. L, N.) In his deposition, Plaintiff testified as follows:

Q. Is it still your desire to be reassigned from CMD?

A. I have applied for other jobs within the agency and applied for rotational assignments from time to time. There's no urgency for me to be reassigned right now. I mean all

the supervisors that I had had some conflict with have gone.

. . . .

Q. There's nothing about the work that you do in the CMD that's inherently stressful, is there?

A. That's correct.

Q. This really has to do with the management and your relationship with them that prompted you to request reassignment?

A. That's correct.

(Def.'s Reply Brief [Doc. # 28] Newby Dep. at 53–55.)

After reviewing the evidence presented by Plaintiff, this Court concludes that Plaintiff has failed to present sufficient evidence to establish that reassignment would be a reasonable accommodation in this case.

Therefore, because Plaintiff cannot establish that he suffered from a disability or that his requested accommodation was reasonable, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's claim of disability discrimination under the Rehabilitation Act, and that claim is DISMISSED.

## C. Age Discrimination in Employment Act

Plaintiff also alleges discrimination on the basis of his age in violation of the Age Discrimination in Employment Act. The ADEA provides, in pertinent part, that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). The ADEA further provides that its prohibitions serve to protect only those individuals who are at least forty years of age. 29 U.S.C. § 631(a). To establish a discrimination claim, a plaintiff may rely on

direct evidence, indirect evidence, or a combination of both direct and indirect evidence. *See, e.g., Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99–101, 123 S.Ct. 2148, 2154–55, 156 L.Ed.2d 84 (2003). Regardless of the type of evidence offered, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277, 286 (4th Cir.2004).

In this case, Plaintiff relies on the judicially created scheme of proof originally established for use in Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted for use in the context of age discrimination under the ADEA. *See Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 731 (4th Cir.1996); *E.E.O.C. v. Western Electric Co.,* 713 F.2d 1011, 1014 (4th Cir.1983). That scheme requires first that Plaintiff prove, by a preponderance of the evidence, a prima facie case of discrimination. *Stokes v. Westinghouse Savannah River Co.,* 206 F.3d 420, 429 (4th Cir.2000). To demonstrate a *prima facie* case of discrimination under the ADEA, a plaintiff must show that (1) he is a member of a protected class, (2) he applied for the position in question, (3) he was qualified for the position, and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *See Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994). Once Plaintiff has established his prima facie case, Defendant must respond with evidence that it acted with a legitimate, nondiscriminatory purpose. *Stokes,* 206 F.3d at 429. If Defendant meets this burden of production, the presumption of discrimination created by the prima facie case vanishes, requiring Plaintiff to prove that De-

fendant's proffered reason is a pretext for discrimination in order to recover. *Id.*[2]

In the present case, Plaintiff contends that Defendant discriminated against him on the basis of age by failing to reassign him and by failing to promote him to the GS–12 level. However, as discussed in Section II above, Plaintiff's failure-to-promote claims were not included within the scope of his EEO charge, and Plaintiff therefore failed to exhaust his administrative remedies with respect to those claims. Thus, the only remaining basis for asserting a claim of age discrimination advanced by Plaintiff is Defendant's failure to reassign him. However, Plaintiff presents absolutely no evidence to establish a prima facie case of age discrimination on this claim. Plaintiff does not present any evidence regarding transfers he applied for that were given to younger workers, nor does he present any evidence that younger workers were able to obtain transfers or reassignments more easily. Because Plaintiff has failed to present any evidence on this issue, the Court finds that Plaintiff has failed to present evidence to establish a prima facie case of age discrimination, and Plaintiff's claims fail as a matter of law.[3] Therefore, Defendant's Motion for

2. In light of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), Plaintiff is no longer required to show pretext *plus* some additional evidence of discrimination. *Id.* at 148, 120 S.Ct. at 2109; *see Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir.2000) (applying *Reeves* in the context of an ADEA claim). In other words, the Court may infer the ultimate fact of discrimination merely from the falsity of Defendant's proffered explanation. *Rowe*, 233 F.3d at 830. In addition, under the Supreme Court's holding in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), Plaintiff may instead offer evidence to support a finding that Defendant's reason, "while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004) (citing *Rishel v. Nationwide Mut. Ins. Co.*, 297 F.Supp.2d 854, 865 (M.D.N.C.2003)). Nevertheless, Plaintiff, at all times, bears the ultimate burden of persuasion with respect to Defendant's alleged unlawful age discrimination. *Stokes*, 206 F.3d at 429.

3. Even if the Court did consider the failure-to-promote claim, Defendant has still failed to establish a prima facie case with respect to his age discrimination claim. In support of his claim under the ADEA, Plaintiff alleges that at the time the EEO complaint was filed he was 55 years old and had been at the GS–11 level for 10 years without being promoted to the GS–12 level, while five other individuals in his job category who were younger than Plaintiff had all been promoted to the GS–12 level. Plaintiff also presents a list of 24 individuals who are younger than Plaintiff who have been promoted to the GS–12 level since 1997. (Newby Aff. [Doc. # 20] Ex. 4.) However, the other individuals on Plaintiff's list who have been promoted to the GS–12 level range in age from 30 to 53. Twelve of the 24 individuals are over age 40, and five are 47 or older, which is older than Plaintiff was in 1989 when he alleges he initially should have been promoted. Thus, Plaintiff's evidence reveals that half of the individuals who were promoted were over age 40 and half were under age 40, and five were older than Plaintiff was when he alleges that he should have been promoted. Plaintiff does not present any evidence regarding the qualifications or performance reviews of the individuals who were promoted. Therefore, the Court concludes that this information would be insufficient to serve as evidence of age discrimination or to create an inference of age discrimination. *Cf. Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir.1994) (considering ADEA discriminatory discharge claim and indicating that samples of between five and thirteen are too small to have any predictive value); *Doan v. Seagate Technology, Inc.*, 82 F.3d 974, 979 (10th Cir.1996) (holding that plaintiff's statistical evidence was flawed because it failed to compare similarly situated individuals and failed to eliminate nondiscriminatory reasons for the numerical disparities, and holding that "[w]hile statistical evidence may create an inference of discrimination, the evidence may be so flawed as to render it insufficient to raise a jury question"); *Culley v. Trak Microwave Corp.*, 117 F.Supp.2d 1317, 1319–20 (M.D.Fl.

Summary Judgment is GRANTED with respect to Plaintiff's age discrimination claim, and that claim is DISMISSED as a matter of law.

### D. Retaliation under Title VII, the ADEA, and the Rehabilitation Act

Finally, Plaintiff also brings claims for retaliation in violation of Title VII, the ADEA, and the Rehabilitation Act based on EPA's refusal to promote Plaintiff to the GS–12 level, Director Brady's alleged threat to terminate Plaintiff, Director Brady's letters contesting Plaintiff's Worker's Compensation claim, and the January 7, 1999 letter of warning for failing to timely respond to e-mail, as discussed in Section II above. Plaintiff claims that these actions were taken against him in retaliation for requesting accommodation under the Rehabilitation Act and for pursuing his EEO claim against EPA.

 "A plaintiff lacking direct evidence of retaliation may utilize the *McDonnell Douglas* ... framework to prove a claim of retaliation." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). To establish a prima facie case of retaliation, an employee must show: (1) that the employee engaged in protected activity; (2) that the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. *Id.; Tinsley v. First Union National Bank*, 155 F.3d 435, 443 (4th Cir.1998). Once a prima facie case has been presented, the employer has the burden of producing a legitimate non-retaliatory reason for the adverse action, and the plaintiff must then show that the employer's proffered reasons are pretextual. *Price*, 380 F.3d at 212.

In the present case, Plaintiff contends that he engaged in a protected activity when he requested reassignment on May 16, 1996 and when he began the EEO process and ultimately filed his EEO complaint on August 26, 1996. Plaintiff next contends that the following activities reflect retaliation against him for his protected activities: Defendant's failure to promote him to the GS–12 level, Supervisor Brady's threat to terminate Plaintiff or subject him to a "fitness for duty" evaluation which never materialized, Supervisor Brady's letters contesting Plaintiff's entitlement to Worker's Compensation Benefits, which did not ultimately affect Plaintiff's benefits, and Supervisor White's actions reprimanding Plaintiff for failure to read his e-mails while he was out for eye surgery. This Court will first consider Plaintiff's claims of retaliatory failure-to-promote, and will then consider Plaintiff's claims of retaliation based on the remaining threats and letters from his supervisors.

#### 1. Retaliation Based on Failure to Promote

Plaintiff first contends that Defendant's failure to promote him to the GS–12 level was in retaliation for engaging in a protected activity. The "protected activity" occurred in 1996, when Plaintiff requested an accommodation from Supervisor Brady and then ultimately filed a formal EEO complaint in August 1996. Thus, Plaintiff contends that Defendant's failure to promote him from 1996 to 2002 was in retaliation for engaging in protected activity in 1996.

 However, Plaintiff has failed to establish a causal connection between Defendant's alleged failure to promote him

---

2000) (holding that evidence establishing that of the 112 employees who had been terminated, 64.29% were over age 40 was insufficient

to provide evidence of discrimination where no information was provided regarding the ages of the employer's workforce as a whole).

and his protected activity. Plaintiff claims that he should have been promoted to the GS–12 level as early as 1991, and he has been challenging his non-promotion since that time. As noted above, the circumstances of Plaintiff's protected activity occurred in 1996, five years after the non-promotion began. Thus, the adverse employment action (the failure to promote Plaintiff) began before the protected activity occurred in 1996, and Plaintiff has not established any connection between the 1996 EEO activity and Defendant's continued failure to promote him. The circumstances simply do not indicate a causal connection between Plaintiff's engaging in a protected activity and Defendant's failure to promote Plaintiff.

 Moreover, even if Plaintiff could establish a prima facie case of retaliation based on Defendant's failure to promote him, Defendant has proffered a legitimate reason for its employment decisions. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir.2000). In this case, Defendant maintains that Plaintiff was not promoted due to work performance reasons. Poor job performance and failure to meet additional work goals are certainly legitimate reasons for not promoting an employee. Here, the evidence shows that Plaintiff received "successful" job reviews for his current position, indicating performance at an average level, but he was not performing at the higher level required for promotion to the GS–12 level. According to Plaintiff's supervisor, Janice White, Plaintiff has not demonstrated that he can consistently produce good quality work, work independently, manage his workload independently, pay attention to details, maintain good organizational skills, and accomplish his work in a timely manner. To operate at the GS–12 level, contract specialists are required to work independently, manage workload independently, and accomplish assigned tasks in a timely manner. (Def.'s Mem. in Support

of Mot. to Dismiss and for Sum. J. [Doc. # 18] Ex. B–1.)

In addition, Defendant has produced numerous e-mails between Plaintiff and his supervisors revealing that Plaintiff often missed deadlines, failed to work independently, and required almost constant direction and guidance from his supervisors to manage his workload and complete his projects. (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18] Ex. B.) Specifically, Plaintiff's supervisors met with him on a weekly basis to help him prioritize his work, and Plaintiff often still failed to accomplish the assigned tasks in a timely manner. (Id.) In his performance reviews for 1996, which were submitted by Plaintiff, Plaintiff's then-supervisor James Kempf noted that:

> Many of Bill's administration actions have not all been done in a timely manner. He is not familiar with all of his ongoing work, having several times during the year expressed surprise that an action is required on a file of his that he did not realize he had. Given that, he is not taking effective steps to mitigate problems in a timely fashion. Too many actions are not conducted independently. Too often modifications contain sloppy errors and sometimes are missing essential elements. Nevertheless, given that Bill is not a journeyman [Level GS–12], his level of performance is considered acceptable.... Bill's level of performance would be questionable were he at a journeyman level.

(Appendix to Pl.'s Mem. of Law in Response to Def's. Mot. for Sum. J. [Doc. # 24] Ex. F.)

In addition, the e-mails submitted by Defendant also reveal that Plaintiff made significant errors and dealt unprofessionally with individuals outside his organization, creating situations his supervisors had to

address.[4] The e-mails also reveal that Plaintiff created internal conflict by yelling, and possibly even cursing, at supervisors and coworkers.[5]

Therefore, the Court finds that even if Plaintiff could establish a prima facie case of retaliation based on Defendant's failure to promote him, Defendant has proffered a reason for Plaintiff's non-promotion sufficient to satisfy its burden of production under the *McDonnell Douglas* framework. Where a defendant has met this burden of production, as Defendant has done here, a plaintiff, in order to recover on his claim of retaliation, must show that the defendant's proffered reason is a pretext used to conceal illegal retaliation. In other words, Plaintiff must show that Defendant was actually and unlawfully motivated by retaliation in its employment decisions. As previously stated, the central reason proffered by Defendant for Plaintiff's non-promotion was the fact that he failed to perform at the higher GS–12 level. In addition, Plaintiff had a history of receiving memos of concern and average performance reviews. Plaintiff neverthe-

less contends that he was, in fact, meeting his employer's legitimate expectations. However, the Fourth Circuit has plainly held that Plaintiff cannot establish discrimination by disagreeing with his employer's assessment of his work performance. *Hawkins,* 203 F.3d at 280 (noting that in a wrongful discharge action, only the perception of the employer matters). Plaintiff cannot create a genuine issue of material fact by simply contending that Defendant must be lying as to the reason for not promoting Plaintiff, without presenting any evidence or basis for that claim. *Carroll v. United Steelworkers of America,* 498 F.Supp. 976, 978 (D.Md.) (holding that for purposes of summary judgment, to raise an issue of credibility Plaintiff "must produce by way of affidavit or otherwise sufficient evidence to show the Court that at trial he will be able to produce some fact to shake the credibility of the affiants. Mere hopes are not enough"), *aff'd,* 639 F.2d 778 (4th Cir.1980). Here, Plaintiff has failed to establish any genuine issue of material fact that Defendant's proffered reason was in

---

4. For example, in addressing a potential problem with a contractor in 1997, he told an individual involved that the situation was "like having a gun aimed right at you," creating significant alarm and confusion that had to be subsequently addressed by supervisors on both sides. (Appendix to Pl.'s Mem. of Law in Response to Def's. Mot. for Sum. J. [Doc. # 24] Ex. B.)

5. In e-mails in 2000, Sue–Ellen Davis reported to Ms. White that Plaintiff was "screaming" at her, to the point that the "Division Director came into the meeting to quiet him down, and stayed to assure that it would not happen again." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18] Ex. B–6.) Another co-worker, Dana Lloyd similarly reported that Plaintiff had become angry and yelled at her during a dispute about leave time. (Id.) Sandra Clark, another co-worker, also reported that Plaintiff "exploded" when she made comments to his work because he did not think he had made a

mistake. (Id.) Plaintiff's supervisor, Ms. White, also reported that Plaintiff yelled at her on numerous occasions, and threatened her by "pointing his finger at me and yelling 'you're going to be sorry.' " (Id.) Ms. White's notes also reveal that during annual performance reviews, she discussed with him his "bad language." (Def.'s Mem. in Support of Mot. to Dismiss and for Sum. J. [Doc. # 18] Ex. B–7.) In response, Plaintiff presents the administrative hearing transcript, during which he testified that he did not recall if he used curse words during his meeting with Director Brady, but "I'm not usually given to cursing someone in public or where there is an office full of people. I know I was angry and I know I was loud." (Appendix to Pl.'s Mem. of Law in Response to Def's. Mot. for Sum. J. [Doc. # 24] Ex. A at 44.) However, Plaintiff does not contend that he never yelled at supervisors or co-workers, and only states that he "usually" would not curse someone in public.

any way false or that it was a pretext to conceal unlawful discrimination or retaliation.

Therefore, because Plaintiff has failed to establish a prima facie case of retaliatory failure-to-promote, and because Plaintiff has failed to present any evidence to establish that Defendant's proffered reason was a pretext for retaliation, Plaintiff's claim of retaliation fails as a matter of law, and Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's claim of retaliatory failure to promote.

### 2. Retaliation Based on Threats and Letters

Plaintiff also alleges that he was subjected to retaliation based on Supervisor Brady's threat to terminate him or subject him to a "fitness for duty" evaluation (which never materialized), Supervisor Brady's letters contesting Plaintiff's entitlement to Worker's Compensation Benefits (which did not ultimately affect Plaintiff's benefits), and Supervisor White's actions reprimanding Plaintiff for failure to read e-mails while he was out for eye surgery.

 Defendant contends that Plaintiff has failed to establish any "adverse employment action" as a result of these instances. As outlined above, one of the elements of Plaintiff's prima facie case is that he suffered an "adverse employment action." The Court of Appeals for the Fourth Circuit has held that an "[a]dverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the 'terms, conditions, or benefits of employment.'" *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir.2001) (internal quotations omitted). Thus, the critical inquiry for this Court is whether Plaintiff has demonstrated a genuine issue of material fact that the incidents he alleg-

es Defendant subjected him to "had some significant detrimental effect" on his employment, *Wagstaff v. City of Durham*, 233 F.Supp.2d 739, 744 (internal quotations omitted), aff'd, 70 Fed.Appx. 725 (4th Cir.2003), that is, whether these actions adversely affected the terms, conditions, or benefits of his employment. *See Von Gunten*, 243 F.3d at 866. In this case, Plaintiff claims the following specific instances of retaliation meet this standard: (1) Supervisor Brady's threat to terminate him or subject him to a "fitness for duty" evaluation; (2) Supervisor Brady's letters contesting Plaintiff's entitlement to Worker's Compensation Benefits; and (3) Supervisor White's actions reprimanding Plaintiff for failure to read e-mails while he was out for eye surgery. (Compl. [Doc. # 1] at 8–9.) Therefore, the Court will consider each of these alleged instances of retaliation in turn.

#### a. Threats to Terminate Plaintiff

 Plaintiff alleges that Supervisor Brady threatened to terminate him or subject him to a "fitness for duty" evaluation during the May 16, 1996 meeting. However, this threat never materialized, and Plaintiff's supervisor and Director Brady both assured Plaintiff that his job was not in jeopardy within days of the alleged threat. Thus, the threats to terminate Plaintiff or subject him to a "fitness for duty" test were never carried out and did not affect the terms, conditions, or benefits of Plaintiff's employment. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997) (holding that a verbal threat to fire an employee was not adverse because of lack of consequences). Therefore, the Court finds that the alleged threat to terminate Plaintiff or subject him to a "fitness for duty" evaluation, in these circumstances, does not amount to an "adverse employment action."

### b. Letters Contesting Worker's Compensation Benefits

 The second alleged instance of harassment occurred as part of the same interaction on May 16, 1996, based on Supervisor Brady's subsequent efforts to contest Plaintiff's entitlement to Worker's Compensation Benefits. After the meeting, Supervisor Brady sent letters to the Office of Worker's Compensation questioning and disputing Plaintiff's entitlement to Worker's Compensation Benefits. However, as part of his supervisory position, Supervisor Brady was required to review and comment on Worker's Compensation claims. In this situation, Supervisor Brady's letters regarding the Worker's Compensation Benefits were not employment decisions and did not impact the terms or conditions of Plaintiff's employment. Moreover, his letters contesting Plaintiff's entitlement to benefits did not ultimately affect Plaintiff's benefits. As such, Supervisor Brady's actions did not have any effect on the terms, conditions, or benefits of Plaintiff's employment. Therefore, the Court concludes that Plaintiff has failed to present sufficient evidence to support a finding that Supervisor Brady's efforts to contest his Worker's Compensation Benefits constituted an "adverse employment action."

### c. Letter of Warning Regarding E-Mails

 Finally, Plaintiff alleges that two years after the May 16, 1996 meeting, he was harassed when Supervisor White reprimanded him for failure to read e-mails while he was out of the office for eye surgery. In *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645 (4th Cir.2002), the Fourth Circuit Court of Appeals discussed whether disciplinary actions constitute adverse employment actions under Title VII. In *Thompson*, the Court held that in order to constitute an adverse employment action, the plaintiff must demonstrate that the disciplinary action "affected the terms, conditions, or benefits of [the plaintiff's] employment." *Id.* at 651–52. In *Thompson*, the court of appeals found that the disciplinary actions at issue did not constitute adverse employment actions where the plaintiff "lost no pay and maintained the same position in the wake of [the] disciplinary actions, both of which were later expunged from his record." *Id.* at 651. In *Allen v. Rumsfeld*, 273 F.Supp.2d 695 (D.Md.2003), the district court, citing *Thompson*, held that reprimands and counseling an employee received did not constitute adverse employment actions because the "plaintiff lost no pay and maintained the same position . . . ." *Id.* at 706.

In the present case, Plaintiff has not presented any evidence that the reprimand he received had any formal or tangible impact on the terms or conditions of Plaintiff's employment. Plaintiff's evidence is therefore insufficient to demonstrate a genuine issue of material fact that the discipline Plaintiff received adversely affected the "terms, conditions, or privileges" of his employment. Specifically, there is no evidence here that Plaintiff was suspended, demoted, or transferred due to receiving the warning letter, nor was his pay ever reduced. For the foregoing reasons, therefore, Plaintiff has failed to show the reprimand by Supervisor White was an adverse employment action.

Based on the foregoing analysis, the Court concludes that Plaintiff has failed to present sufficient evidence to support a finding that any of the alleged threats or actions by his supervisors constituted an "adverse employment action." Therefore, Plaintiff cannot establish a prima facie case of retaliation as to any of these alleged actions. As a result, Defendant is entitled to judgment as a matter of law on these retaliation claims, and Defendant's

Motion for Summary Judgment is GRANTED as to these claims.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to the following claims: (1) allegations regarding Plaintiff's encounter with Supervisor Ralph Kirby in 1992; (2) allegations that in January 1996, his supervisor threatened to restrict his bathroom breaks; (3) allegations regarding disability discrimination or age discrimination based on a warning letter for failing to read his e-mails and similar issues following his eye surgery; and (4) allegations regarding disability discrimination or age discrimination based on Defendant's failure to promote him to the GS–12 level. Therefore, with respect to these claims, Defendant's Motion to Dismiss [Doc. # 15] is GRANTED.

However, as a preliminary matter and subject to the Court's ruling on Defendant's Motion for Summary Judgment, Defendant's Motion to Dismiss [Doc. # 15] is DENIED with respect to the remainder of Plaintiff's Complaint, which consists of the following remaining claims: (1) Disability discrimination in violation of the Rehabilitation Act based on EPA's refusal to reassign Plaintiff; (2) Age discrimination in violation of the ADEA based on EPA's refusal to reassign Plaintiff; and (3) Retaliation in violation of Title VII, the Rehabilitation Act, and the ADEA, based on EPA's refusal to promote Plaintiff to the GS–12 level, Director Brady's alleged threat to terminate Plaintiff, Director Brady's letters contesting Plaintiff's Worker's Compensation claim, and the January 7, 1999 letter of warning for failing to timely respond to e-mail. Therefore, all of these remaining claims are appropriately considered by the Court in evaluating Defendant's Motion for Summary Judgment.

With respect to Defendant's Motion for Summary Judgment, the Court finds that Plaintiff's claims of disability discrimination in violation of the Rehabilitation Act are not supported by sufficient evidence to support a finding that Plaintiff suffered from a disability or that his requested accommodation was reasonable. Therefore, Defendant's Motion for Summary Judgment [Doc. # 15] as to Plaintiff's Rehabilitation Act Claim is GRANTED. With respect to Plaintiff's claim for age discrimination in violation of the ADEA, Plaintiff has failed to present sufficient evidence to support his prima facie case, and Defendant's Motion for Summary Judgment [Doc. # 15] as to Plaintiff's ADEA claim is GRANTED.

Finally, with respect to Plaintiff's claim of retaliatory failure to promote, the Court finds that Plaintiff failed to present sufficient evidence to establish his prima facie case and failed to present any evidence to establish that Defendant's proffered non-retaliatory reason was a pretext for retaliation. In addition, with respect to Plaintiff's additional claims for retaliation based on alleged threats and other actions by his supervisors, Plaintiff failed to present any evidence to establish that the alleged actions constituted an "adverse employment action." Therefore, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's retaliation claims.

In summary, based on the foregoing rulings, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. With respect to all of Plaintiff's remaining claims that survive Defendant's Motion to Dismiss, Defendant's Motion of Summary Judgment is GRANTED.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

## ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Document # 15] is GRANTED with respect to the following claims: (1) allegations regarding Plaintiff's encounter with Supervisor Ralph Kirby in 1992; (2) allegations that in January 1996, his supervisor threatened to restrict his bathroom breaks; (3) allegations regarding disability discrimination or age discrimination based on a warning letter for failing to read his e-mails and similar issues following his eye surgery; and (4) allegations regarding disability discrimination or age discrimination based on Defendant's failure to promote him to the GS–12 level; and all of these claims are DISMISSED with prejudice.

IT IS FURTHER ORDERED that, as a preliminary matter and subject to the Court's ensuing ruling on Defendant's Motion for Summary Judgment, Defendant's Motion to Dismiss [Document # 15] is DENIED with respect to Plaintiff's remaining claims, that is: (1) Disability discrimination based on EPA's refusal to reassign Plaintiff; (2) Age discrimination based on EPA's refusal to reassign Plaintiff; and (3) Retaliation based on EPA's refusal to promote Plaintiff to the GS–12 level, Director Brady's alleged threat to terminate Plaintiff, Director Brady's letters contesting Plaintiff's Worker's Compensation claim, and the January 7, 1999 letter of warning for failing to timely respond to his e-mail.

IT IS FURTHER ORDERED, however, that Defendant's Motion for Summary Judgment [Document # 15] is GRANTED with respect to all of these remaining claims, that is: (1) Disability discrimination based on EPA's refusal to reassign Plaintiff; (2) Age discrimination based on EPA's refusal to reassign Plaintiff; and (3) Retaliation based on EPA's refusal to promote Plaintiff to the GS–12 level, Director Brady's alleged threat to terminate Plaintiff, Director Brady's letters contesting Plaintiff's Worker's Compensation claim, and the January 7, 1999 letter of warning for failing to timely respond to e-mail; and all of Plaintiff's claims are hereby DISMISSED with prejudice.